634 So.2d 604 (1994)
Frank R. BRANCA, Petitioner,
v.
CITY OF MIRAMAR, Respondent.
No. 80435.
Supreme Court of Florida.
January 13, 1994.
Rehearing Withdrawn April 29, 1994.
*605 Bruce Rogow, Bruce S. Rogow, P.A., and Beverly A. Pohl, Ft. Lauderdale, for petitioner.
Joseph H. Serota and Edward G. Guedes, Weiss, Serota & Helfman, Miami, for respondent.
GRIMES, Justice.
We review Branca v. City of Miramar, 602 So.2d 1374 (Fla. 4th DCA 1992), in which the court certified the following question as one of great public importance:
WHETHER ARTICLE X, SECTION 14, AND THE REQUIREMENTS THEREOF APPLY ONLY TO EXISTING COUNTY OR MUNICIPAL PENSION PLANS, OR WHETHER THE REQUIREMENTS ALSO APPLY TO COUNTY OR MUNICIPAL PENSION PLANS THAT INCREASE OTHER EXISTING GOVERNMENTAL [i.e., STATE] PENSION PLAN BENEFITS.
Id. at 1377. We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
Frank R. Branca was mayor of the City of Miramar. The city had no pension plan for elected officials. At Branca's request, the city finance director obtained copies of certain pension plans. The city attorney then drafted a proposed ordinance which would establish such a pension plan. The city retained a consulting actuary who offered suggestions for changes in the draft. Finally, on April 4, 1988, the city commission enacted ordinance 88-16, which established a pension plan for elected city officials. The ordinance passed by a vote of four to one. Branca did not vote because under the city charter the mayor votes only if there is a tie or if he chooses to exercise a veto.
City elections were held later in 1988. The pension plan for elected officials became a political issue, and some new commissioners were elected. Branca retired on April 3, 1989, after serving sixteen years as an elected member of the city commission. He began receiving retirement benefits under the ordinance on May 1, 1989. On May 15, 1989, the city commission repealed ordinance 88-16. Branca is the only elected official to have retired while the ordinance was in effect. Subsequently, the ordinance was submitted to the State of Florida Department of Administration, Division of Retirement, for review. The division's general counsel concluded that ordinance 88-16 violated article X, section 14 of the Florida Constitution and part VII of chapter 112, Florida Statutes (1987), as being actuarially unsound. The city then filed a complaint for declaratory judgment with respect to the constitutionality and enforceability of ordinance 88-16.
At the trial, the city presented expert testimony that the pension plan was actuarially unsound because it transferred to future taxpayers costs which reasonably should be expected to be paid by current taxpayers. The city's actuary did not disagree with the actuarial unsoundness of the plan but expressed the opinion that ordinance 88-16 had established a deferred compensation plan for a select group of management or highly compensated employees which was exempted from the requirement of actuarial soundness by section 112.625(1)(b), Florida Statutes (1987). The trial court held the ordinance to be invalid under article X, section 14 of the Florida Constitution and chapter 112, Florida Statutes. Because Branca had already been paid more than he had contributed toward his pension, the court ruled that he was not entitled to receive further payments under ordinance 88-16. Without specifically ruling on the constitutional issue, the district court of appeal affirmed the judgment and certified the question quoted above.
At the outset, Branca contends that the city did not have standing to attack the constitutionality of its ordinance. As a general *606 rule, a public official does not have standing to sue for the purpose of determining whether or not the law which sets forth his duties is valid. Graham v. Swift, 480 So.2d 124 (Fla. 3d DCA 1985). However, there appears to be an exception to this rule when the law requires an expenditure of public funds. Kaulakis v. Boyd, 138 So.2d 505 (Fla. 1962). Under the circumstances, we cannot say that the city was precluded from seeking a declaratory judgment.
Turning to the constitutional question, article X, section 14, provides as follows:
A governmental unit responsible for any retirement or pension system supported in whole or in part by public funds shall not after January 1, 1977, provide any increase in the benefits to the members or beneficiaries of such system unless such unit has made or concurrently makes provision for the funding of the increase in benefits on a sound actuarial basis.
Part VII of chapter 112 implements this constitutional requirement.
Branca contends that article X, section 14, only pertains to increases in benefits in existing pension plans and that ordinance 88-16 created a new plan. The reason the court below worded the certified question in the way it did is because of the city's argument that it already had a pension plan by reason of section 112.048, Florida Statutes (1987). This statute mandates that cities provide a retirement benefit of half pay for an elected official who voluntarily retires and who has held office in the city for a period of twenty consecutive years. We do not believe that the existence of section 112.048 meant that the City of Miramar had an existing plan, particularly since no one had ever qualified for it. Therefore, we have chosen to reword the certified question as follows:
WHETHER ARTICLE X, SECTION 14 OF THE FLORIDA CONSTITUTION APPLIES ONLY TO INCREASES IN EXISTING COUNTY OR MUNICIPAL PENSION PLAN BENEFITS.
We reject Branca's contention that there can be no increase in benefits unless there is an existing plan. When there is no plan, there are no benefits. However, if a plan is adopted, the benefits are increased. It is unreasonable to believe that article X, section 14, requires that an increase in benefits from a preexisting plan be actuarially sound but that a new pension plan carries no similar requirement. We hold that article X, section 14, applies to new plans as well as existing plans.
Branca's final argument is that the city should be estopped from denying him the pension benefits.[1] While the city seeks to place Branca in a bad light by emphasizing that he was instrumental in the passage of ordinance 88-16, there is nothing in the record which demonstrates that he did anything improper. The city attorney told him the plan was legal, and the actuary put his stamp of approval on it. The ordinance was properly enacted by the city commission as a whole.
The theory of estoppel is an application of the rules of fair play. Town of Largo v. Imperial Homes Corp., 309 So.2d 571 (Fla. 2d DCA 1975). This was illustrated in Kuge v. State Department of Administration, 449 So.2d 389 (Fla. 3d DCA 1984), in which a state employee was advised by the Division of Retirement that if she worked through March 1983, her state retirement benefits would vest. After she retired on March 31, 1983, it was determined that the division had miscalculated her years of creditable retirement service and that she was several months short. The court held that the state was equitably estopped from denying her retirement benefits when the employee had retired upon the state's representation that her benefits had vested.
On the other hand, a governmental entity may not be estopped through mistaken statements of the law, State Department of Revenue v. Anderson, 403 So.2d 397 (Fla. 1981), and it is true that the validity of Miramar's pension plan is a legal question. However, Branca relied upon the fact that ordinance 88-16 had been duly enacted by the city commission. He irrevocably changed his position in reliance upon the *607 ordinance when he retired. The city should not be permitted to unilaterally terminate his pension benefits.
We acknowledge that estoppel cannot be applied against a governmental entity to accomplish an illegal result. Salz v. Department of Administration, 432 So.2d 1376 (Fla. 3d DCA 1983); Dade County v. Bengis Associates, Inc., 257 So.2d 291 (Fla. 3d DCA), cert. denied, 261 So.2d 839 (Fla. 1972). However, the City of Miramar had the statutory authority under section 112.048(3), Florida Statutes (1987), to provide a pension plan for elected officials. The fact that the city created a program which was found to be improperly funded does not preclude relief under the doctrine of equitable estoppel. In this respect, we agree with the dissenting opinion of Judge Farmer below when he said:
The city looks for its authority to cancel this plan in certain state constitutional and statutory provisions relating to the actuarial soundness of public employer retirement plans in Florida. But I do not understand how the fact that this plan may violate these provisions yields the conclusion that the city can just stop paying one of its retirees. I should have thought that the remedy for the constitutional/statutory violation would be to order the city to make the plan actuarially sound out of its own pockets (whether from tax increases or other revenues) but not to order it to stop paying retirement income.
Branca, 602 So.2d at 1378 (Farmer, J., dissenting).
Accordingly, we answer the certified question as reworded in the negative. We quash the decision below and remand with directions that Branca be paid his pension benefits by the City of Miramar.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, KOGAN and HARDING, JJ., concur.
NOTES
[1] Branca does not argue before us that ordinance 88-16 created a deferred compensation plan nor does he contest the actuarial unsoundness of the pension plan.