PER CURIAM.
Santa Rosa County appeals from a summary judgment in a suit for declaratory and injunctive relief against the Department of Community Affairs (DCA), the Division of Administrative Hearings (DOAH), and Don W. Davis in his capacity as hearing officer for DOAH. The County’s suit challenged the constitutionality of certain comprehensive planning statutes found in the Growth Management Act, Part II of Chapter 163, Florida Statutes, and rules applied by the Department of Community Affairs to implement the Act. We affirm in part, reverse in part, and certify a question of great public importance to the Florida Supreme Court.
The County, pursuant to section 163.3161, submitted a proposed comprehensive plan to the Department for written comment on April 2, 1990. DCA provided the County with its objections, recommendations and comments regarding the County’s comprehensive plan. Subsequently, the County adopted its comprehensive plan by ordinance. DCA issued its “Statement of Intent to Find the Comprehensive Plan Not in Compliance” with Florida Administrative Code Rule 9J-5, and Chapter 163, Florida Statutes. DCA later filed a petition with DOAH for a determination that the County’s comprehensive plan did not comply with Chapter 163. The Department alleged: (1) the County’s comprehensive plan faded to discourage urban *620 sprawl as required by Rule 9J-5006(3)(b)7 and 9J-5.011(2)(b)3, and was inconsistent with other requirements of Rule 9J-5.006(3)(b); (2) the coastal element of the County’s plan was inconsistent with section 163.3177(6)(g) and Rule 9J-5.012; and (3) the plan was inconsistent with several provisions of the West Florida Regional Policy Plan, in violation of sections 163.3177(10)(a) and 163.-3184(l)(b).
Almost a year later, the County filed a Complaint for Declaratory and Injunctive Relief in Santa Rosa County Circuit Court seeking to have a declaration as to the constitutionality of the statutes and rules being applied to the County in the administrative comprehensive plan case. The lawsuit was later moved to circuit court in Leon County. The Complaint raised the following issues as grounds for declaratory relief: (1) the validity and constitutionality of several provisions of Florida Administrative Code Rule 9J-5, which require that local government comprehensive plans contain provisions which discourage urban sprawl and achieve other land use goals; (2) the constitutionality of provisions of section 163.3184, which authorize the Administration Commission to withhold legislative appropriations to the County and to direct state agencies not to undertake certain infrastructure activities in the County and which allow DNR and the Board of Trustees of the Internal Improvement Trust Fund to withhold permit and consent of use approvals if it is determined that the comprehensive plan is inconsistent with the coastal element requirements of Rule 9J — 5; (3) the validity and constitutionality of Rule 9J-5 and sections 163.3184 and 163.3177 that require the comprehensive plans be consistent with Regional Policy Plans; and (4) the validity of parts of Rule 9J-5.012 which set out requirements for what a comprehensive plan must contain in its coastal element.
DCA filed motions to dismiss based on the County’s failure to exhaust available administrative remedies and the County’s lack of standing to file the action. Circuit Judge Reynolds denied both motions. The case was assigned from Judge Reynolds to Judge Smith.
In June of 1992, the parties, in the context of the pending DOAH action, signed a Stipulated Settlement Agreement. The agreement provided in part:
18. Adoption or Approval of Remedial Plan Amendments. Within 60 days after receipt of the Department’s objections, recommendations and comments, the local government shall consider for adoption all remedial plan amendments and a transmittal letter to the Department as provided by law. The letter shall describe the remedial action adopted for each part of the plan amended, including references to specific portions and pages.
20. Review of Remedial Amendments and Notice of Intent. Within 45 days after receipt of the adopted remedial plan amendments and support documents, the Department shall issue a notice of intent pursuant to Section 163.3184, Florida Statutes, for the adopted amendments in accordance with this agreement....
b. Not in Compliance: If the remedial actions are not adopted, or if they do not satisfy this agreement, the Department shall issue a notice of intent to find the plan amendments not in compliance and shall forward the notice to DOAH for a hearing as provided in Subsection 163.-2184(10), the Florida Statutes, and may request that the matter be consolidated with the pending proceeding for a single, final hearing. The parties hereby stipulate to that consolidation and to the setting of a single final hearing if the Department so requests.
In September 1992, DCA filed a Motion for Summary Judgment in the circuit court action, alleging among other things settlement of the administrative litigation concerning compliance of the comprehensive plan and that the civil suit was thus moot, as Santa Rosa now had no present need for a declaratory judgment. The court granted the motion. The summary judgment order read in part:
On June 24, 1992, a settlement agreement was entered into between the County and the DCA, which resolved the disputes between the parties arising out of or related to the comprehensive plan adopted by the *621 County. (Settlement Agreement, Part I, paragraph 9, page 3). There is no genuine issue of material fact regarding the validity of such settlement agreement, nor the nonexistence of any dispute as alleged in the complaint, which was the predicate for this action.
The constitutionality of a statute can only be challenged in a declaratory judgment action when there is “an actual, present and practical need for the declaration.” (citation omitted) There must be a bona fide need for a declaratory judgment based on present, ascertainable facts, or the Court has no jurisdiction to render such relief, (citation omitted).
It is, therefore, ordered and adjudged that Summary Judgment be and the same is hereby entered in favor of the Defendants, who shall go hence without day, and the Plaintiff shall take nothing by this action.
The County subsequently filed a motion for rehearing which was denied. In the order denying rehearing, the court noted that Santa Rosa alleges that it still needs a declaration because it will have future problems complying with Chapter 163 and Rule 9J-5. The court stated, “[t]his Court lacks jurisdiction to entertain hypothetical disputes which may or may not occur in the future nor does this Court have jurisdiction to give advisory opinions.” Although the summary judgment was based on mootness, the issue of standing re-emerged in the motion for rehearing. In the order denying rehearing, Judge Smith explained:
Initially, this Court was concerned as to the propriety of this cause even being considered under the declaratory judgment act. There was a close question as to whether Santa Rosa County, as a political subdivision, had standing to offensively challenge the constitutionality of certain statutes and rules. Department of Education v. Gerald Lewis, 416 So.2d 455 (Fla. 1982). The Court concluded that Santa Rosa County’s tenuous standing was predicated on its present and ongoing dispute with DCA, in which the administrative proceeding was then pending before Don Davis.
[[Image here]]
The Settlement Agreement resolved the dispute between the parties as to the particular facts alleged in the Complaint. This Court granted Summary Judgment on the grounds that the requested declaration no longer presented an actual controversy as to the state of facts nor was there a bona fide, present need for the declaration for the reason that Santa Rosa County was no longer subject to sanctions.
We agree with the County that the issue is not moot; however, we affirm the summary judgment based on the County’s lack of standing.

Mootness

The entry of a settlement agreement between the County and DCA does not moot the issues presented for declaratory judgment. The settlement agreement, as indicated in the above quoted portions of paragraph 18 and 20B, reached tentative terms on settlement which require the County to enact amendments to its plan in order for DCA to find the plan “in compliance.” If the amendments do not satisfy the agreement, DCA may request the matter be consolidated with the pending proceeding for a single, final hearing. Either party can request a final hearing under paragraph 14 in the event of breach of the agreement or if it becomes apparent that any party is not proceeding in good faith. DCA has since accepted the County’s amendments and has joined with the County to defend the amendments against intervenors; however, the amendments may still be rejected by the Administration Commission and found “not in compliance.” § 163.3164(1); § 163.3184, Fla.Stat.
Even if the settlement agreement is determined to be final, the issue is still not moot because of the ongoing nature of growth management and comprehensive planning. Sections 163.3161(6), 163.3191(1) and 163.-3194(l)(a), Florida Statutes, demonstrate the ongoing nature of the Growth Management Act. Section 163.3161(6) states:
It is the intent of this act that the activities of units of local government in the preparation and adoption of comprehensive plans, or elements or portions therefor, *622 shall be conducted in conformity with the provisions of this act.
Section 163.3191, which is titled “Evaluation and appraisal of comprehensive plan,” at subsection (1) provides:
The planning program shall be a continuous and ongoing process. The local planning agency shall prepare periodic reports on the comprehensive plan, which shall be sent to the governing body and to the state land planning agency at least once every five years after the adoption of the comprehensive plan.... It is the intent of this act that adopted comprehensive plans be periodically updated through the evaluation and appraisal report.
Section 163.3194 contains a provision on the legal status of a comprehensive plan. After a plan is adopted in conformity with Chapter 163, “all development undertaken by, and all actions taken in regard to development orders by, governmental agencies in regard to land covered by such plan or element shall be consistent with such plan or element as adopted.” § 163.3194(l)(a), Fla. Stat.
The purpose of declaratory relief is “to afford relief from insecurity and uncertainty with regard to rights, status, and other equitable or legal remedies,” and therefore the declaratory judgment statute is to be construed liberally. § 86.101, Fla.Stat. (1989); Chiles v. Children A, B, C, D, E and F, 589 So.2d 260, 263 (Fla.1991); accord Overman v. State Bd. of Control, 62 So.2d 696 (Fla.1952). To entertain a declaratory judgment action, however, there must be “a bona fide need for such a declaration based on present, ascertainable facts or the court lacks jurisdiction to render declaratory relief.” Martinez v. Scanlan, 582 So.2d 1167, 1170 (Fla.1991). Santa Rosa has properly stated a cause of action for declaratory relief under these standards.
Santa Rosa will continue to have to comply with Chapter 163 and Rule 9J-5 in executing the Comprehensive Plan and in all Plan amendment proceedings. Specific provisions will keep the County in a position of having to comply with the law or risk losing vital revenue. Compliance may be made a predicate for “state agencies ... to provide funds to increase the capacity of roads, bridges, or water and sewer systems_” § 163.-3184(ll)(a), Fla.Stat. Noncomplianee of a future plan amendment places at risk participation in several state programs that are financially beneficial to appellant. Id.
The County’s rights, immunities, status and privileges are placed in doubt by having to comply with the comprehensive planning requirements. All future development orders and land development regulations issued by the County must be consistent with the comprehensive plan, and the County must follow a statutorily prescribed procedure to evaluate consistency. § 163.3194, Fla.Stat. The County must review existing regulations, and, within one year after submission of its revised comprehensive plan for review, must adopt or amend land development regulations that are consistent with and implement the plan. § 163.3202(1), Fla.Stat.
The settlement agreement did not, then, render the action moot. The issue of the constitutionality of portions of the Growth Management Act and Rule 9J-5 raises an ongoing concern regarding the authority of local governments and involves widespread public interest. A ease is not moot for purposes of jurisdiction if the law being challenged will have a recurring effect or if the problem leading to the case would be a recurring one. Nichols v. Nichols, 519 So.2d 620, n. 1 (Fla.1988); Shelton v. Reeder, 121 So.2d 145 (Fla.1960); Rosenhouse v. 1950 Spring Term Grand Jury, 56 So.2d 445 (Fla. 1952); Breen v. Arbomar Condominium Ass’n, 501 So.2d 697 (Fla. 2d DCA 1987). By way of analogy, an appellate court does not lose jurisdiction of a cause even though the matter in controversy has become moot as to one or more of the litigants in cases involving wide public interest or where such matters involve the operation of essential government functions, the duties and authority of public officials in the administration of the law, or the disbursement of public funds. Chiles v. Children A, B, C, D, E and F, 589 So.2d at 263; Walker v. Pendarvis, 132 So.2d 186 (Fla.1961); Ervin v. Capital Weekly Post, Inc., 97 So.2d 464, 466 (Fla.1957). Santa Rosa’s declaratory judgment action evokes wide public interest because the challenged *623 statutes and rules apply to every county in Florida and affect the duty, power and authority of local governments to plan for and manage their own growth. The issue, therefore, is not moot regardless of the settlement agreement.

Standing

Even though the issues involved are not moot, the summary judgment must be affirmed because Santa Rosa County lacks standing to challenge portions of Chapter 163 and Rule 9J-5. The County has shown neither an exemption from the rule that public officers may not bring such challenges, nor personal injury to its officers resulting from enforcement of those rules. See Dep’t of Revenue v. Markham, 396 So.2d 1120, 1121 (Fla.1981) (“courts have developed special rules concerning the standing of governmental officials to bring a declaratory judgment action questioning a law those officials are duty-bound to apply_ Disagreement with a constitutional or statutory duty, or the means by which it is to be carried out, does not create a justiciable controversy or provide an occasion to give an advisory judicial opinion”). Legislation which affects the duties of state officers and agencies is presumed valid, and such parties do not have standing to assert otherwise. Id.; Graham v. Swift, 480 So.2d 124 (Fla. 3d DCA 1985).
Exceptions to this rule exist where “the objecting party can show that he will be injured in his person, property or other material right by virtue of the statute in question,” Green v. City of Pensacola, 108 So.2d 897, 900 (Fla. 1st DCA 1959), affd, 126 So.2d 566 (Fla.1961), or where the law requires an expenditure of public funds. Branca v. City of Miramar, 634 So.2d 604 (Fla.1994) (City had standing to attack the constitutionality of its own ordinance where ordinance required expenditure of public funds); Kaulakis v. Boyd, 138 So.2d 505 (Fla.1962) (County Commissioners had the right and the duty to challenge the validity of a section of home rule charter subjecting the county to liability in tort action). Santa Rosa County falls within neither of these exceptions.
The County qua county is subject to the prohibition against bringing this action without demonstrating an exception. See Weaver v. Heidtman, 245 So.2d 295, 296 (Fla. 1st DCA 1971) (“The respective counties of this State do not possess any indicia of sovereignty; they are creatures of the legislature, created under Art. VIII, Sec. 1, of the State Constitution, F.S.A., and accordingly are subject to the legislative prerogatives in the conduct of their affairs”); Art. VIII, § 1(f), Fla. Const. (Santa Rosa County as a political subdivision of the state has “such power of self-government as is provided by general or special law” and “may enact, in a manner prescribed by general law, county ordinances not inconsistent with general or special law”).
The County argues that this case falls within the delineated exceptions because an overriding public interest concerning the protection of public funds is involved. However, the statutory and rule provisions in question do not specify any expenditures of public funds other than the ordinary cost of the County doing business, i.e., complying with the growth management laws of the state and preparing a local comprehensive plan. While there are certain administrative costs associated with the preparation and approval of a local comprehensive plan, the Act does not mandate the gross expenditures of local government funds in the same manner as the cases on which the County relies. Arnold v. Shumpert, 217 So.2d 116 (Fla.1968) (county questioned the constitutionality of a law which required county to waive sovereign immunity and therefore purchase liability insurance); Green v. City of Pensacola, supra (comptroller entitled to question constitutionality of special act which purports to exempt the City of Pensacola from payment of gross receipts tax as required by general law).
Santa Rosa’s argument concerning expenditure of public funds turns specifically upon its contention that chapter 163 and Rule 9J-5 require the County to expend great sums of money in formulating and adopting a comprehensive land use plan. Santa Rosa also notes its anticipated expenses to pay consultants, hold public hearings, and take other steps as called for by law. Finally, Santa Rosa points to its potential loss of legislative appropriations should the Administration Commission find the plan, or subsequent *624 amendments, not in compliance with the statute and rule. These arguments have not fallen upon deaf ears. It is, however, our task to apply existing law. Underlying many of the County’s contentions here is the implication that the Growth Management Act, by its terms, and specifically by its enforcement provisions, places local governments in an adversary position with the state. Our review of the Act confirms that the state holds a powerful stick which may be utilized to persuade local governments to engage in comprehensive planning of a mode acceptable to the state planning agency. Undoubtedly, the Growth Management Act will, in some cases, add to the cost of local governance. Our review of the case law, however, indicates that such increased cost of governance, even to fund actions that are not necessarily desired by the majority of voters within the jurisdiction of a local government such as Santa Rosa County, does not fit within an exception to the general rule prohibiting public officers and agencies from challenging a law they are bound to apply.
Recognizing the impact of Florida’s Growth Management Act upon county governments and the state, we certify to the supreme court, as a question of great public importance, the following:
DOES A COUNTY HAVE STANDING TO CHALLENGE BY A DECLARATORY ACTION THE CONSTITUTIONALITY OF A STATUTE OR RULE WHICH INDIRECTLY REQUIRES THE COUNTY TO EXPEND PUBLIC FUNDS IN ORDER TO COMPLY WITH THE MANDATES OF SUCH STATUTE OR RULE, AND FURTHER PROVIDES FOR A POTENTIAL LOSS OF REVENUE TO THE COUNTY IN THE EVENT OF NONCOMPLIANCE?
AFFIRMED in part, REVERSED in part and QUESTION CERTIFIED.
JOANOS and KAHN, JJ., concur.
ERVIN, J., concurs and dissents w/opinion.