VAN NORTWICK, J.
 

 Appellants, who possess leasehold interests in various properties located on Pen-
 
 *893
 
 sacóla Beach in Escambia County, appeal a final summary judgment in favor of appel-lees, Chris Jones, the property appraiser for Escambia County, and Janet Holley, the tax collector for Escambia County, in which the trial court determined that the appellants are equitable owners of the leasehold improvements on their properties and that, accordingly, such improvements are subject to taxation at the ad valorem rate. Jones and Holley cross-appeal the trial court’s rulings that the tax collector does not have standing to raise affirmative defenses concerning the constitutionality of the taxing statutes, sections 196.199(2)(b) and 199.023(1), Florida Statutes, and that Holley, as tax collector, may not sell tax certificates on properties if taxes become delinquent. Because we agree with the trial court that appellants are equitable owners and subject to ad valorem property taxes on them leasehold improvements, we affirm the issue raised on appeal. As a result, we do not reach the issue of the tax collector’s standing to challenge the constitutionality of the tax statutes. Further, because we agree with appellees that the appellant leaseholders did not plead any facts suggesting that they are subject to the sale of tax certificates, we hold that the trial court inappropriately granted declaratory injunctive relief as no actual controversy exists on this issue at this time.
 

 Background
 

 The long and rather tortured history of the taxation of properties on Santa Rosa Island is set forth in detail in the following cases:
 
 State v. Escambia County,
 
 52 So.2d 125 (Fla.1951);
 
 Straughn v. Camp,
 
 293 So.2d 689 (Fla.1974);
 
 Williams v. Jones,
 
 326 So.2d 425 (Fla.1975);
 
 Archer v. Marshall,
 
 355 So.2d 781 (Fla.1978);
 
 Am Fi Investment Corp. v. Kinney,
 
 360 So.2d 415 (Fla.1978);
 
 Ward v. Brown,
 
 919 So.2d 462 (Fla. 1st DCA 2005);
 
 Bell v. Bryan,
 
 519 So.2d 1024 (Fla. 1st DCA 1988)
 
 (Bell II);
 
 and
 
 Bell v. Bryan,
 
 505 So.2d 690 (Fla. 1st DCA 1987)
 
 (Bell I).
 
 Most recently, this court affirmed the judgment of the Santa Rosa County Circuit Court which ruled that the leaseholders of various properties located on Navarre Beach in Santa Rosa County were equitable owners of the real property and the improvements thereon were subject to taxation at the ad valorem tax rate.
 
 Accardo v. Brown,
 
 63 So.3d 798 (Fla. 1st DCA 2011).
 

 Santa Rosa Island includes Pensacola Beach in Escambia County and Navarre Beach, leased by Escambia County to Santa Rosa County. Historically, the private leaseholds on Santa Rosa Island have been taxed in various ways by statute. The leaseholds have been deemed both exempt from ad valorem taxation and then later taxed as real property for ad valorem tax purposes.
 
 See State v. Escambia County,
 
 52 So.2d at 130 (upholding statutory exemption of the leaseholds on Santa Rosa Island from ad valorem taxes); and
 
 Straughn v. Camp,
 
 293 So.2d at 694 (upholding revocation of previous tax exemption). In 1980, section 196.199(2)(b), Florida Statutes,
 
 [1]
 
 which reads essentially the
 
 *894
 
 same today, was enacted making private leaseholds of government owned property exempt from ad valorem taxation and subject only to intangible personal property taxes when rental payments are due as consideration for the leaseholds.
 
 [2]
 
 The statute adds the caveat, however, that “[njothing in this section shall be deemed to exempt personal property, buildings, or other real property improvements owned by the lessee from ad valorem taxation.”
 

 In
 
 Bell I,
 
 505 So.2d at 691, this court held that improvements made by leaseholders on Santa Rosa Island should be taxed at the intangible personal property rate, rather than the rate applicable to real property. The court rejected what it described as the “novel proposition” argued by the Escambia County tax collector that the improvements made by the leaseholders should be assessed at the full real property rate because “the improvements, which are property of Escambia County, and the development of which is the express purpose of the creation of the leasehold, are not part of the leasehold.”
 
 Id.
 
 The court explained that it could “find no basis in law or reason for determining that the improvements on the real property are not as much a part of the leasehold as the real property itself.”
 
 Id.
 
 at 691-92.
 

 A decade and a half later, the Santa Rosa County tax assessor began assessing ad valorem taxes on leasehold improvements of certain Navarre Beach leaseholders. The leaseholders brought suit challenging the assessment. The circuit court agreed with the Santa Rosa County taxing authorities that the leaseholders were equitable owners of the leasehold improvements. In
 
 Ward v. Brown,
 
 this court affirmed, holding that the leaseholders had “sufficient rights and duties regarding the property to make them equitable owners.” 919 So.2d at 463. In determining that the Navarre Beach leaseholders were the equitable owners of the improvements, the
 
 Ward
 
 majority relied on several factors: (1) the leaseholders had the right to perpetual lease renewals; (2) they had the right to use or rent the improvements; (3) they had the right to encumber their interests; (4) they had the right to transfer their property rights; (5) they had the right to realize any appreciation in value from sale or rental income; (6) they were obligated to insure and maintain the improvements; and (7) they were responsible for the payment of any taxes.
 
 Id.
 
 The
 
 Ward
 
 court distinguished
 
 Bell I
 
 on the grounds that the issue of equitable ownership was not addressed in
 
 Bell.
 
 919 So.2d at 464 n. 2.
 

 The Facts and Proceedings Below
 

 Appellants lease real property on Pensacola Beach on which they have constructed improvements used for private residential purposes, including single family homes, townhomes, and condominiüm units. Beginning in 2004, property appraiser Jones appraised these improvements as real property and tax collector Holley billed the leaseholders for ad valorem real property taxes on these improvements. Appellants brought an action against these taxing authorities seeking a declaration that the assessments were unlawful and asking that they be enjoined from pursuing and collecting ad valorem real property taxes on the improvements. Relying upon sections 196.199(8)(a), 197.432(9), and 199.023(l)(d), Florida Statutes (2004), appellants asked that Holley be enjoined from creating any liens for taxes on their leasehold estates and from selling any tax certificates to collect any real property taxes should they fail to pay their taxes in the future.
 

 
 *895
 
 In their answer and affirmative defenses, the taxing authorities asserted that section 199.023(1), defining intangible personal property, and section 196.199(2)(b) were unconstitutional. Appellants moved to strike the affirmative defenses challenging the constitutionality of sections 196.199(2)(b) and 199.023(1), contending that the tax collector and tax assessor are ministerial public officers who have no standing to challenge the constitutionality of statutes defining property for purposes of taxation or how such properties should be taxed. The 2004 action was consolidated with subsequent actions which addressed ad valorem taxation on the properties for the tax years 2005, 2006, 2007 and 2008.
 

 All of the leases at issue are for 99-year initial terms. Although many of these leases include renewal options, some contain no renewal option, and none of the leases are automatically renewable. Unlike the circumstances in
 
 Ward v. Brown,
 
 where title to the improvements was vested in the leaseholders until the lease ended at which point it would revert to Santa Rosa County, all of appellants’ leases here provide that legal title to any building or improvement of a permanent character erected on the premises shall vest in Es-cambia County, subject to the terms of the leases. The leases require the lessee to make improvements on the property and to repair and maintain those improvements. The leases provide that a leaseholder must rebuild any damaged or destroyed improvement so as to place it in its former condition and that no leaseholder may remove any improvement of a permanent character from the leasehold.
 

 Despite these restrictions, the leaseholders have significant benefits: they may mortgage or otherwise encumber their leaseholds without prior approval of the lessors; they have the ability to convey their leasehold interests by a sublease or assignment; they have the right to rent their leasehold interests for the production of income; and they receive the full benefit of any capital gains or appreciation in the values of their properties. Although there are some variations in the leases, in this proceeding, the parties treated these leases as identical for purposes of determination of the issues in this case.
 

 The parties filed cross-motions for summary final judgment. Below, appellants argued that the leases in this case are distinguishable from the leases in
 
 Ward v. Brown
 
 and that, therefore, this court’s decision in
 
 Bell I
 
 should control the taxation of the leaseholds. The trial court acknowledged that the leases at issue in
 
 Ward v. Brown
 
 were for original terms of 99 years and were renewable automatically in perpetuity, whereas none of the leases in the instant case renew automatically and vary widely from 99-year renewals to no renewal provision at all. Further, the trial court recognized that the
 
 Ward v. Brown
 
 leases were freely alienable while many of the leases herein have restrictions on alienation; the
 
 Ward v. Brown
 
 leases required the lessees to keep the buildings insured while not all the leases in this case require the same; and the
 
 Ward v. Brown
 
 leases did not include requirements and limitations on recordkeeping and renting out condominium units. Nonetheless, the trial court was persuaded by the similarities of the leases in this case to the leases in
 
 Ward v. Brown,
 
 explaining as follows:
 

 The benefits enjoyed and burdens borne by lessees in this case bear substantial similarities to the leases in
 
 Ward v. Brown,
 
 though the leases are not identical. The subleases involved in
 
 Ward v. Brown
 
 stemmed from the same federal land grant involved in this case. Such leases in Santa Rosa County were required to be “substantially upon the same terms, considerations, conditions
 
 *896
 
 as like leases then in use [in Escambia County].”
 

 As in
 
 Ward v. Brown,
 
 the Plaintiffs in the instant case enjoy substantially all of the benefits of ownership of the improvements and condominium units on their Santa Rosa Island leasehold estates, such as the right to receive rental income and the right to capital appreciation. They also enjoy the right to depreciate their improvements and condominium units for federal tax purposes, if the units are rented.
 

 The Plaintiffs here also bear substantially all of the burdens of ownership found to be significant in
 
 Ward v. Brown,
 
 including the burdens to repair, maintain, and insure their properties. By law, and by the terms of some of the Plaintiffs’ leases, they also are responsible for the payment of any and all taxes associated with them properties.
 

 The trial court rejected the argument that
 
 Ward v. Brown
 
 and the cases it relied upon found that equitable ownership requires either a perpetual lease or an option to purchase, explaining, in pertinent part, as follows:
 

 In
 
 Leon County Educ. Facilities Auth. v. Hartsfield,
 
 698 So.2d 526 (Fla.1997) and
 
 Hialeah, Inc. v. Dade County,
 
 490 So.2d 998 (Fla. 3d DCA),
 
 rev. den.
 
 500 So.2d 544 (Fla.1986), each lessee had an option to purchase the leased property and was considered an equitable owner. However, a close reading of the Supreme Court opinion in
 
 Leon County Educ. Facilities Auth. v. Hartsfield,
 
 reveals the Court did not rely upon the option to purchase in the lease to determine the lessee was the equitable owner of the property. In
 
 Leon County Educ. Facilities Auth. v. Hartsfield,
 
 the educational facilities authority (a public corporate body) had the option to purchase the dormitory and food service project for one dollar upon payment in full of the costs to finance the project. The Supreme Court determined that the authority was the equitable owner of the leasehold property and that, therefore, it was exempt from ad valorem taxation. The Supreme Court stated:
 

 Our holding in this case should not be construed to mean that one who leases propeHy from another becomes the equitable omier of the propeHy if the lease contains an option to purchase.
 
 To the contrary, this Court has long held that the status of parties to the ordinary lease with an option to purchase remains that of landlord and tenant until the option is exercised and that the lessee has no equitable interest in the property, [citation omitted]
 
 We hold only that under the stipulated facts of this case, the project is not subject to ad valorem taxation because the Authority holds virtually all the benefits and burdens of omiership.
 

 698 So.2d at 530. (Emphasis supplied). In
 
 Hialeah, Inc. v. Dade County,
 
 the City of Hialeah, which had obtained title to the land from Hialeah, Inc., leased it back to the corporation for purposes of conducting thoroughbred horse racing on the property. If racing were to be discontinued, the leasehold would be terminated. The corporation had the option to purchase the city’s fee simple interest in the $11.4 million parcel of land upon satisfaction of the city’s mortgage debt and a further payment of $100. The court held that the property could be taxed because the corporation was the beneficial owner of the land and the city held “legal title to the property merely as security.”
 
 Id.,
 
 at 1001. While the option to purchase was a significant factor in the court’s determination, it was not the sole reason the court found the corporation to be the equitable owner of the property.
 

 Accordingly, the trial court concluded:
 

 
 *897
 
 Plaintiffs have argued persuasively that there are distinctions with a difference between the leases at issue here and those in
 
 Ward v. Brown
 
 and that those differences warrant a different result in this case. However, while this Court is sympathetic to the Plaintiffs’ arguments, the distinctions are not sufficiently substantial or material to justify a different outcome, and this Court is bound by
 
 stare decisis
 
 to follow the holding of
 
 Ward v. Brown,
 
 except as to those Plaintiffs covered by the
 
 res judicata
 
 effect of the
 
 Bell v. Bryan
 
 decisions ...
 

 With respect to the leaseholders in
 
 Bell I
 
 and
 
 Bell II,
 
 the trial court concluded that, based on principles of
 
 res jtidicata,
 
 they were entitled to retain their exemption from ad valorem taxation on leasehold improvements. In applying the test for application of
 
 res judicata,
 
 the trial court expressly found that “the issue of equitable ownership was in fact raised in the
 
 Bell
 
 cases.” The court concluded that res judi-cata precludes the taxing authorities from litigating their claim in this case that the
 
 Bell v. Bryan
 
 leaseholders are the equitable owners of their leasehold improvements. The taxing authorities, Jones and Holley, have not cross-appealed this ruling.
 

 Turning to the assertion of the tax assessor and tax collector that they could challenge the constitutionality of section 196.199(2)(b) and other statutes, the trial court ruled that public officials do not have standing to challenge the constitutionality of state statutes.
 
 See Crossings at Fleming Island v. Echeverri,
 
 991 So.2d 793, 803 (Fla.2008);
 
 Miller v. Higgs,
 
 468 So.2d 371, 374 (Fla. 1st DCA 1985),
 
 disapproved on other grounds, Capital City Country Club, Inc. v. Tucker,
 
 613 So.2d 448 (Fla.1993).
 

 The trial court granted summary judgment in favor of the
 
 Bell I
 
 and
 
 Bell II
 
 leaseholders. As to all other plaintiffs below (the appellants herein), the court granted summary judgment in favor of Jones and Holley. On motion for rehearing, the trial court agreed with appellants that Holley was enjoined from creating any liens or selling any tax certificates on their property.
 

 Analysis
 

 We acknowledge the distinctions between the instant case and
 
 Ward v. Brown.
 
 In
 
 Ward v. Brown,
 
 this court emphasized the fact that the leaseholders in that case had the right to perpetual lease renewals, a factor which is not present in the case before us. Further, here legal title to the improvements is vested in Escambia County, while the title to the improvements in
 
 Ward v. Brown
 
 was vested in the leaseholders until the leases ended, at which point it would revert to Santa Rosa County. Nevertheless, we are persuaded, as was the trial court, that we are bound by
 
 stare decisis
 
 to follow
 
 Ward v. Brown. See Accardo v. Brown,
 
 63 So.3d at 800 (rejecting the argument of Santa Rosa County leaseholders that
 
 Bell I,
 
 not
 
 Ward,
 
 controls the taxation of improvements).
 

 “The doctrine of
 
 stare decisis,
 
 or the obligation of the court to abide by its own precedent, is grounded on the need for stability in the law and has been a fundamental tenet of Anglo-American jurisprudence for centuries.”
 
 N. Fla. Women’s Health and Counseling Servs., Inc. v. State,
 
 866 So.2d 612, 637 (Fla.2003). The presumption in favor of precedent is strong and a court should only recede after consideration of the following questions:
 

 (1) Has the prior decision proved unworkable due to reliance on an impractical legal “fiction”?
 

 (2) Can the rule of law announced in the decision be reversed without serious injustice to those who have relied on it and without serious disruption in the stability of the law? And
 

 (3) [Hjave the factual premises underlying the decision changed so drastically
 
 *898
 
 as to leave the decision’s central holding utterly without legal justification?
 

 Id.
 
 In the case before us, we answer each of these inquiries in the negative.
 

 There is nothing inherently unlawful in subjecting the appellants to ad valo-rem taxes, as leaseholders on Santa Rosa Island were subject to ad valorem taxation from 1972 to 1980, before section 196.199(2)(b) was enacted. Looking at the benefits and burdens of ownership, these Escambia County leaseholders are no different than the Santa Rosa County leaseholders in
 
 Ward v. Brown
 
 or
 
 Accardo v. Brown.
 
 While the
 
 Ward v. Brown
 
 court attempted to distinguish
 
 Bell I
 
 on the ground that the issue of equitable ownership was not before the court in
 
 Bell I,
 
 a ground which has been disproved in this case, the
 
 Ward v. Brown
 
 court did examine more closely the issue of equitable ownership to arrive at a different conclusion, one which is neither unworkable nor results in serious injustice. The effect of
 
 Ward
 
 was to recede from
 
 Bell I sub silen-tio.
 

 Finally, we agree with cross-appellants that the trial court’s injunction, enjoining tax collector Holley from creating any liens for taxes on appellants’ leasehold estates or improvements thereon or from selling any tax certificates to collect any real property taxes assessed on the leasehold estates or on the improvements, was premature as there does not yet exist a bona fide need for such a declaration.
 
 May v. Holley,
 
 59 So.2d 636, 639 (Fla.1952) (“Before any proceeding for declaratory relief should be entertained it should be clearly made to appear that there is a bona fide, actual, present practical need for the declaration ... ”). To obtain declaratory relief there should be an actual controversy, in the absence of which the circuit court lacks jurisdiction to render declaratory relief.
 
 Santa Rosa County v. Admin. Comm’n,
 
 661 So.2d 1190, 1192-93 (Fla.1995);
 
 see also State v. Florida Consumer Action Network,
 
 830 So.2d 148, 152-53 (Fla. 1st DCA 2002) (holding that groups failed to allege an appropriate jus-ticiable controversy for declaratory judgment purposes). As recognized in
 
 Martinez v. Scanlan,
 
 582 So.2d 1167, 1171 (Fla.1991), when there is no justiciable controversy, the court is, in effect, being asked to give an advisory opinion which is improper in a declaratory action. Appellants did not allege that taxes were not paid and tax liens had been placed on any of their properties. Indeed, tax liens could not have been placed on any of the property since section 194.171, Florida Statutes, imposes a stay on the collection of taxes until an appeal is final. Moreover, appellants did not express the intention not to pay their taxes. Thus, it is entirely hypothetical to speculate that appellants will refuse to pay lawfully imposed taxes.
 

 AFFIRMED in part, and REVERSED in part.
 

 THOMAS and MARSTILLER, JJ„ concur.
 

 [1]
 

 . Section 196.199(2)(b), provides, in pertinent part:
 

 (2) Property owned by the following governmental units, but used by nongovernmental lessees, shall only be exempt from taxation under the following conditions:
 

 (b) ... Such leasehold estate shall be taxed only as
 
 intangible personal property
 
 pursuant to Chapter 199 if rental payments are due in consideration of such leasehold estate. If no rental payments are due pursuant to an agreement creating such leasehold estate, the leasehold shall be taxed as real property. Nothing in this section shall be deemed to exempt personal property, buildings, or other real property improvements owned by the lessee from ad valorem taxation.
 

 (Emphasis supplied).
 

 [2]
 

 . The Santa Rosa Island Authority (SRIA), which was established to serve as agent for Escambia County in the administration of the island and the leaseholds, collects the rental fees which the leaseholders pay.