IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

ISLAND RESORTS
INVESTMENTS, INC.,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

  Appellant,

CASE NO. 1D15-2916

v.

CHRIS JONES, PROPERTY
APPRAISER FOR ESCAMBIA
COUNTY, FLORIDA; JANET
HOLLEY, TAX COLLECTOR
FOR ESCAMBIA COUNTY,
FLORIDA; ET AL.,

  Appellees.

_____/

Opinion filed March 21, 2016.

An appeal from the Circuit Court for Escambia County.
Edward P. Nickinson, III, Judge.

Edward P. Fleming and R. Todd Harris of McDonald, Fleming, Moorhead,
Pensacola, for Appellant.

Thomas M. Findley and Robert J. Telfer, III of Messer Caparello, P.A., Tallahassee,
for Appellees.


LEWIS, J.

  Appellant, Island Resorts Investments, Inc., which possesses a leasehold

interest in a twelve-acre parcel of unimproved land on Pensacola Beach in Escambia

County, appeals the trial court's Final Judgment in favor of Appellees, Chris Jones, the property appraiser for Escambia County, and Janet Holley, the tax collector for Escambia County. Appellant challenges the trial court's determination that it is the equitable owner of the leased land and, as such, its leasehold interest is subject to ad valorem real property taxes. For the reasons that follow, we reverse the trial court's Final Judgment upon concluding that Appellant is not the equitable owner of the leased land and its leasehold interest is subject only to intangible personal property taxes pursuant to section 196.199(2)(b), Florida Statutes (2011).

### *Background*

The land at issue was conveyed by the United States to Escambia County in 1947 pursuant to a Deed of Conveyance that permitted the county to lease the land for purposes it deemed to be in the public interest, but prohibited the county from conveying or otherwise disposing of the land. In 1997, the Santa Rosa Island Authority, an agency of Escambia County, leased about forty acres of land to Gary Work as Trustee of the Pensacola Beach Land Trust pursuant to a Development Lease Agreement ("Master Lease"). In 2008, Gary Work as Trustee of the Pensacola Beach Land Trust leased a twelve-acre parcel of land to Appellant pursuant to a Development Sublease Agreement.

Appellant subleased the twelve-acre land subject to the terms and conditions of the Master Lease for a period of 99 years, with the right to negotiate a renewal on

2

such terms and conditions that are mutually agreeable to the parties. The land is leased for development as a high density residential/commercial property, but is currently undeveloped and contains no improvements. Appellant must pay lease fees; maintain liability, flood, windstorm, fire, and casualty insurance; pay all future ad valorem real property taxes, if any, and all other future taxes and assessments imposed on the subleased property; repair or rebuild any building or improvement in the event of damage or destruction; and pay for all its utilities. Appellant shall also have the right to assign, sublease, or otherwise convey or to mortgage all or portions of the subleased property. Title to any buildings or improvements on the leased property vests in Escambia County, and Appellant is required to deliver and surrender possession of the subleased property upon the expiration or termination of the lease.

Following this Court's issuance of Accardo v. Brown, 63 So. 3d 798 (Fla. 1st DCA 2011), and 1108 Ariola, LLC v. Jones, 71 So. 3d 892 (Fla. 1st DCA 2011), the Escambia County Property Appraiser began assessing ad valorem property taxes on leased lands on Pensacola Beach, including Appellant's leased property. In 2011, Appellant filed its First Amended Complaint, seeking a declaratory judgment that its interest in the land may only be taxed as intangible personal property under section 196.199(2)(b), Florida Statutes, and an injunction prohibiting the assessment and collection of ad valorem taxes on the land. In their Answer and Affirmative

3

Defenses, Appellees alleged that Appellant is the equitable owner of the leased land, denied that Appellant is entitled to a tax exemption under Chapter 196, and raised numerous affirmative defenses, including that Appellant's interpretation of section 196.199 would lead to an unconstitutional result. The parties subsequently filed competing motions for summary judgment, disputing whether Appellant is the equitable owner of the leased land and thus subject to ad valorem real property taxes and whether Appellees' constitutional arguments fail for lack of standing and on their merits. In its Order on Cross-Motions for Summary Judgment, the trial court denied Appellant's motion and granted Appellees' motion upon concluding that Appellant is the equitable owner of the land and its leasehold interest is therefore subject to ad valorem taxes. The trial court subsequently entered a Final Judgment pursuant to its Order on Cross-Motions for Summary Judgment in favor of Appellees, and this appeal followed.

*Analysis*

A trial court's order granting final summary judgment is reviewed de novo to determine whether there are genuine issues of material fact and whether the court properly applied the correct rule of law. Glaze v. Worley, 157 So. 3d 552, 553-54 (Fla. 1st DCA 2015); see also Castleberry v. Edward M. Chadbourne, Inc., 810 So. 2d 1028, 1029 (Fla. 1st DCA 2002) ("Summary judgment is appropriate if there is

4

no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law.").

On appeal, the parties agree that Appellant's lease is not perpetually renewable and that the leased land is undeveloped. They dispute, however, whether Appellant's leasehold interest in the unimproved land is subject only to intangible personal property taxes pursuant to section 196.199, Florida Statutes, or whether Appellant is the equitable owner of the land and thus subject to ad valorem taxation.

Section 196.199, Florida Statutes (2011), is titled "Government property exemption" and provides in pertinent part:

> (2) Property owned by the following governmental units but used by nongovernmental lessees shall only be exempt from taxation under the following conditions:
>
> . . .
>
> (b) Except as provided in paragraph (c), the exemption provided by this subsection shall not apply to those portions of a leasehold or other interest defined by s. 199.023(1)(d), Florida Statutes 2005, subject to the provisions of subsection (7). *Such leasehold or other interest shall be taxed only as intangible personal property pursuant to chapter 199, Florida Statutes 2005, if rental payments are due in consideration of such leasehold or other interest.* All applicable collection, administration, and enforcement provisions of chapter 199, Florida Statutes 2005, shall apply to taxation of such leaseholds. If no rental payments are due pursuant to the agreement creating such leasehold or other interest, the leasehold or other interest shall be taxed as real property. Nothing in this paragraph shall be deemed to exempt personal property, buildings, or other real property improvements owned by the lessee from ad valorem taxation.
>
> (c) Any governmental property leased to an organization which uses the property exclusively for literary, scientific, religious, or charitable purposes shall be exempt from taxation.

. . .

(7) Property which is originally leased for 100 years or more, exclusive of renewal options, or property which is financed, acquired, or maintained utilizing in whole or in part funds acquired through the issuance of bonds pursuant to parts II, III, and V of chapter 159, shall be deemed to be owned for purposes of this section.

(Emphasis added). Section 196.199(2)(b) was first adopted in 1980 and has not been materially altered since then. Accardo v. Brown, 139 So. 3d 848, 851 (Fla. 2014) (hereafter "Accardo"). The statute is tied to section 199.023(1)(d), Florida Statutes (2005), which was repealed effective January 1, 2007, and defined intangible personal property as including "'all *leasehold or other possessory interests* in real property owned by [governmental entities], which are undeveloped or predominantly used for residential or commercial purposes and upon which rental payments are due.'" Id.

"'The concept of equitable ownership in ad valorem taxation has long been a part of Florida law.'" Id. at 852 (quoting Leon Cty. Educ. Facilities Auth. v. Hartsfield, 698 So. 2d 526 (Fla. 1997)). "The lessee is deemed to be the leased property's equitable owner if the lessee holds 'virtually all the benefits and burdens of ownership' of the leased property." Robbins v. Mt. Sinai Med. Ctr., Inc., 748 So. 2d 349, 351 (Fla. 3d DCA 1999) (quoting Hartsfield, 698 So. 2d at 530)). The Third District explained:

Valid "burdens and benefits" considered by Florida courts include the lessee's obligation to insure, maintain and pay taxes on the leased property, as well as the lessee's option to purchase the leased property

6

at the end of the lease term. None of these factors, including an option to purchase, convey to a lessee equitable title to leased property when considered individually. However, when these factors are considered in relation to one another, the courts may determine that a lessee is the equitable owner of leased property. In considering all of these aforementioned factors, Florida courts have only granted a lessee equitable ownership of leased property when that lessee retained an option to purchase the leased property for *nominal value*.

Id. at 351 (internal citations omitted) (citing in part Hartsfield); see also Accardo v. Brown, 63 So. 3d 798, 801 (Fla. 1st DCA 2011), approved by, 139 So. 3d 848 (Fla. 2014).

In Accardo, the Florida Supreme Court considered whether the lands and improvements on certain leaseholds on Navarre Beach on Santa Rosa Island were subject to intangible personal property taxes instead of ad valorem real property taxes. 139 So. 3d at 849. The supreme court explained that the subleases generally provided for an initial 99-year term and further renewals on like terms; required the lessees to pay rentals and bear the responsibility for insurance, maintenance, repair, and the payment of taxes; provided that title to any buildings or improvements would vest in the lessor upon the termination of the lease; and granted the lessees the right to enjoy the capital appreciation and rental income derived from their interests, convey their interests without restraint, and encumber their properties with mortgages. Id. at 850. The court noted in a footnote that the appellants "point out that some of the subleases are not perpetually renewable, but they do not make an argument that is specific to those leases"; thereafter, the court made no mention of

7

the non-perpetually renewable leases and based its analysis and conclusion on the perpetually renewable nature of the subleases.  Id. at 852 n.2., 852-57.  With regard to the underlying lands, the supreme court reasoned and concluded in part as follows:

> . . . [T]he threshold question [is] whether the property in question is "real property owned by" a governmental entity. § 199.023(1)(d), Fla. Stat. (2005). Our case law regarding the application of the equitable ownership doctrine makes clear that the person or entity holding equitable title to real property will be deemed the owner of the property for ad valorem tax purposes. . . .
>
> As the First District did in *Ward,* we also reject the petitioner taxpayers' argument that equitable ownership can exist under a leasehold only where there is a right ultimately to acquire legal title. The interest of a lessee under a perpetually renewable lease is not materially different from the interest of a lessee under a lease for a term of years providing the right for the lessee to obtain title for nominal consideration upon the termination of the lease. In both circumstances, the lessee effectively has the right to exercise perpetual dominion over the property.
>
> . . . None of the obligations imposed on the petitioner taxpayers are sufficient to defeat the conclusion that they hold "virtually all the benefits and burdens of ownership" of the improvements and the land.

Id. at 855-57.  Because the appellants were the equitable owners of the property, section 196.199(2)(b) was inapplicable.  Id. at 857; see also 1108 Ariola, LLC v. Jones, 139 So. 3d 857, 859 (Fla. 2014) (explaining that its holding in Accardo "that the taxpayers in that case are the equitable owners of both the improvements and the underlying land, turns on the fact that the leases are perpetually renewable").  Cf. 1108 Ariola, LLC, 139 So. 3d at 858-60 (concluding that the lessees were the equitable owners of the *improvements* on their leaseholds on

8

Pensacola Beach, even though they did not have a perpetual lease or the right to ultimately purchase the property for nominal value, because they failed to establish that they do not hold virtually all the benefits and burdens of ownership of the improvements where they did not present any argument concerning the *useful life* of the improvements); Leon Cty. Educ. Facilities Auth. v. Hartsfield, 698 So. 2d 526, 527-30 (Fla. 1997) (holding that the appellant/lessee was the equitable owner of the project because the lessor held legal title only to facilitate the project's financing, served as a *conduit* through which lease payments were used to repay the holders of the certificates of participation that financed the project, and could not make any profit and the appellant could acquire legal title by paying *nominal consideration*); Ward v. Brown, 919 So. 2d 462, 463-65 (Fla. 1st DCA 2005) (holding that the appellants were the equitable owners of the *improvements* on their leaseholds on Navarre Beach and thus were not exempt from ad valorem property taxes pursuant to section 196.199 because their 99-year leases were *perpetually renewable*; they had the rights to use or rent the improvements, encumber their interests, transfer their property rights, and realize any appreciation in value from the sale or rental income; and they were responsible for insuring and maintaining the improvements and for paying the taxes); Hialeah, Inc. v. Dade Cty., 490 So. 2d 998, 998-1001 (Fla. 3d DCA 1986) (holding that the appellant/lessee was the equitable owner of the property and thus was subject to ad valorem real property taxes on the

9

land because the thirty-year lease between it and the city was a *mortgage* given that it was intended merely for securing money, the city held legal title to the property only as security and all the burdens and obligations of ownership rested with the appellant, and the appellant could acquire the property for *nominal consideration* upon its payment of the debt); Mikos v. King's Gate Club, Inc., 426 So. 2d 74, 74-76 (Fla. 2d DCA 1983) (holding that the mobile home owners were the equitable owners of the lots for ad valorem tax purposes because they had *perpetual dominion* over their designated sites as members of the nonprofit corporation that had fee simple ownership of the mobile home park and was prohibited from selling or leasing any lot).

Based on the facts of this case and the foregoing authorities, we conclude that Appellant is not the equitable owner of the leased land. This is not a case entailing the taxation of land where the lessee has the right to the perpetual renewal of its lease, the lessee has the right to purchase the property for nominal consideration at the end of the lease, the lessor holds legal title merely as security, or the lessee otherwise has perpetual dominion over the property. Neither does this case involve the taxation of improvements. Rather, Appellant bears all the burdens during the term of the lease, at the end of which all the rights to the property revert to the lessor. We further conclude that Appellant otherwise meets the requirements of section 196.199(2)(b)—that is, rental payments are due in consideration for the leasehold

interest; the property was not originally leased for 100 years or more, exclusive of renewal options; and the property was not financed, acquired, or maintained through the issuance of bonds—, requiring the taxation of its leasehold interest in the land only as intangible personal property.

Turning now to Appellees' constitutional challenge to section 196.199, we reject their argument upon finding that they lack standing to raise the constitutionality of this statute. See § 197.332(1), Fla. Stat. (2011) (providing that the tax collector has the authority and obligation to collect taxes, interests, and costs); Crossings At Fleming Island Cmty. Dev. Dist. v. Echeverri, 991 So. 2d 793, 794-803 (Fla. 2008) (holding that a property appraiser acting in his or her official capacity lacks standing to raise the constitutionality of a statute as a defense in an action by a taxpayer; finding its earlier holding in State ex rel. Atlantic Coast Line Railway Co. v. State Board of Equalizers, 94 So. 681 (Fla. 1922), "that a public official may not defend his nonperformance of a statutory duty by challenging the constitutionality of the statute" to be binding and to "promote[] an important public policy of ensuring the orderly and uniform application of state law"; and citing Miller v. Higgs, 468 So. 2d 371 (Fla. 1st DCA 1985), disapproved on other grounds by Capital City Country Club, Inc. v. Tucker, 613 So. 2d 448 (Fla. 1993), as holding that the property appraiser lacked standing to file a declaratory action alleging that Chapter 80-368, Laws of Florida, was an unconstitutional

11

reclassification of leasehold interests in government-owned land because "'[s]tate officers and agencies are required to presume that the legislation affecting their duties is valid, and they do not have standing to initiate litigation for the purpose of determining otherwise'"). We also find inapplicable the public funds exception, which provides that a ministerial officer has standing to challenge the constitutionally of a law providing for the disbursement of public funds, because the statute being challenged does not require the expenditure of public funds. See § 196.199, Fla. Stat. ("Government property exemption"); Echeverri, 991 So. 2d at 797 ("[C]aution[ing] that past precedent indicates that the public funds exception is a narrow exception."); Branca v. City of Miramar, 634 So. 2d 604, 606 (Fla. 1994) (recognizing the public funds exception when the law requires the expenditure of public funds); Santa Rosa Cty. v. Admin. Comm'n, Div. of Admin. Hearings, 642 So. 2d 618, 623 (Fla. 1st DCA 1994), approved in part, disapproved in part, Santa Rosa Cty. v. Admin. Comm'n, Div. of Admin. Hearings, 661 So. 2d 1190 (Fla. 1995) ("Legislation which affects the duties of state officers and agencies is presumed valid, and such parties do not have standing to assert otherwise. Exceptions to this rule exist where 'the objecting party can show that he will be injured in his person, property or other material right by virtue of the statute in question,' or where the law requires an expenditure of public funds.") (Internal citations omitted).

### *Conclusion*

Accordingly, we REVERSE the trial court's Final Judgment and REMAND for further proceedings consistent with this opinion.

SWANSON and WINOKUR, JJ., CONCUR.