998 So.2d 641 (2008)
DUVAL COUNTY SCHOOL BOARD, Appellant,
v.
STATE, BOARD OF EDUCATION, Appellee.
No. 1D07-6041.
District Court of Appeal of Florida, First District.
December 2, 2008.
*642 Ronald G. Meyer, Jennifer Blohm, and Janeia R. Daniels of Meyer and Brooks, P.A., Tallahassee; and Joel B. Toomey, Chief, Appellant Division, Duval County School Board, for Appellant.
Deborah K. Kearney, General Counsel, Florida Department of Education, Tallahassee; Bill McCollum, Attorney General, and Timothy Osterhaus, Deputy Solicitor General, Office of the Attorney General, Tallahassee, for Appellee.
BARFIELD, J.
The Duval County School Board challenges the constitutionality of section 1002.335, Florida Statutes (2006), alleging it violates article IX of the Florida Constitution. We conclude that section 1002.335 is facially unconstitutional.
In 2006, the Florida legislature enacted section 1002.335, Florida Statutes, which established the "Florida Schools of Excellence Commission" as an independent, state-level entity with the power to authorize charter schools throughout the State of Florida. Prior to the enactment of section 1002.335, only district school boards could authorize charter schools. Under section 1002.335, the district school boards may exercise that exclusive authority only if the State Board of Education grants them such power within their district. The statute became effective for the 2007-2008 fiscal year.
Multiple school boards filed resolutions with the State Board of Education seeking to retain exclusive authority to authorize charter schools in their respective districts. After conducting hearings, the Board of Education allowed only three school boards (Orange County, Polk County, and Sarasota County) to retain their exclusive authority. The resolutions of the remaining 28 school boards were denied. Several school boards then filed notices of appeal, challenging the constitutionality of section 1002.335.[1]
*643 Article IX of the Florida constitution sets forth provisions regarding education. Article IX, section 4 provides:
SECTION 4. School districts; school boards.
(a) Each county shall constitute a school district; provided, two or more contiguous counties, upon vote of the electors of each county pursuant to law, may be combined into one school district. In each school district there shall be a school board composed of five or more members chosen by vote of the electors in a nonpartisan election for appropriately staggered terms of four years, as provided by law.
(b) The school board shall operate, control and supervise all free public schools within the school district and determine the rate of school district taxes within the limits prescribed herein. Two or more school districts may operate and finance joint educational programs.
A "determination that a statute is facially unconstitutional means that no set of circumstances exists under which the statute would be valid." Fla. Dep't of Revenue v. City of Gainesville, 918 So.2d 250, 256 (Fla.2005). A facial challenge considers only the text of the statute, not its application to a particular set of circumstances, and the challenger must demonstrate that the statute's provisions pose a present total and fatal conflict with applicable constitutional standards. Ogborn v. Zingale, 988 So.2d 56, 59 (Fla. 1st DCA 2008); Cashatt v. State, 873 So.2d 430 (Fla. 1st DCA 2004).
Section 1002.335 provides for the creation of charter schools throughout Florida. This statute permits and encourages[2] the creation of a parallel system of free public education escaping the operation and control of local elected school boards. It vests in an "Excellence Commission" of seven people appointed by the State Board of Education from recommendations of the Governor, President of the Senate and Speaker of the House of Representatives, all the powers of operation, control and supervision of free public education specifically reserved in article IX, section 4(b) of the Florida Constitution, to locally elected school boards, with regard to charter schools sponsored by the Commission.
The State Board of Education argues that section 1002.335 was enacted to further the explicit constitutional goals of systemic uniformity and efficiency[3], and that state-level involvement promotes the fair treatment of charter schools. The State Board also argues that district school boards "will continue to operate and control the overwhelming majority of Florida's public schools, excluding just a small percentage of schools," and that section 1002.335 will have a modest impact limited *644 to the narrow charter school sphere. To these assertions, we find the observations of Justice Pariente in Bush v. Holmes, 919 So.2d 392, 398 (Fla.2006), to be applicable:
As a general rule, courts may not reweigh the competing policy concerns underlying a legislative enactment. The arguments of public policy supporting both sides in this dispute have obvious merit, and the Legislature with the Governor's assent has resolved the ensuing debate in favor of the proponents of the program. In most cases, that would be the end of the matter. However, as is equally self-evident, the usual deference given to the Legislature's resolution of public policy issues is at all times circumscribed by the Constitution. Acting within its constitutional limits, the Legislature's power to resolve issues of civic debate receives great deference. Beyond those limits, the Constitution must prevail over any enactment contrary to it.
Thus, in reviewing the issue before us, the [judges]emphatically are not examining whether the public policy decision made by the other branches is wise or unwise, desirable or undesirable. Nor are we examining whether the Legislature intended to supplant or replace the public school system to any greater or lesser extent. Indeed, we acknowledge... that the statute at issue here is limited in the number of students it affects. However, the question we face today does not turn on the soundness of the legislation or the relatively small numbers of students affected. Rather, the issue is what limits the Constitution imposes on the Legislature. We make no distinction between a small violation of the Constitution and a large one. Both are equally invalid. Indeed, in the system of government envisioned by the Founding Fathers, we abhor the small violation precisely because it is precedent for the larger one.
The further arguments that the statute authorizes the Department of Education to permit the districts to retain exclusive control over the chartering of schools and permits districts to retain control over charter schools sponsored by district boards provide no salvation as the statute also provides the vehicles to remove that authority, relegating local boards to essentially ministerial functions. See § 1002.335(5)(e), (10)(a), Fla. Stat. (2006). At the time of the filing of this appeal, only three school boards had been allowed to retain "control" over local chartered schools. All other applications had been rejected, including those from district boards which had never had an opportunity to demonstrate ability to operate such schools as they had never had an application for a charter school.
The provisions of section 1002.335, Florida Statutes (2006), pose a present total and fatal conflict with article IX, section 4 of the Florida Constitution. We therefore hold that section 1002.335, Florida Statutes (2006), is facially unconstitutional.
BROWNING, C.J., and KAHN, J., concur.
NOTES
[1] This Court consolidated the present case with the following cases for travel and briefing purposes: School Board of Escambia County v. State Board of Education, 1D07-6105, 998 So.2d 646, 2008 WL 5055701 (Fla. 1st DCA 2008); St. Lucie County School Board v. State Board of Education, 1D07-6562, 998 So.2d 645, 2008 WL 5055745 (Fla. 1st DCA 2008); School Board of Broward County v. State Board of Education, 1D07-6584, 998 So.2d 645, 2008 WL 5055797 (Fla. 1st DCA 2008); School Board of Palm Beach County v. State Board of Education, 1D08-0084, 998 So.2d 647, 2008 WL 5055877 (Fla. 1st DCA 2008); School Board of Lake County v. State Board of Education, 1D08-0168, 998 So.2d 644, 2008 WL 5055937 (Fla. 1st DCA 2008); Sumter County School Board v. State Board of Education, 1D08-0169, 998 So.2d 649, 2008 WL 5055991 (Fla. 1st DCA 2008); School Board of St. Johns County v. State Board of Education, 1D08-0170, 998 So.2d 648, 2008 WL 5056018 (Fla. 1st DCA 2008); School Board of Osceola County v. State Board of Education, 1D08-0171, 998 So.2d 647, 2008 WL 5056023 (Fla. 1st DCA 2008); School Board of Volusia County v. State Board of Education, 1D08-0172, 998 So.2d 646, 2008 WL 5056060 (Fla. 1st DCA 2008); Hernando County School Board v. State Board of Education, 1D08-0173, ___ So.2d ___, 2008 WL 5056187 (Fla. 1st DCA 2008); School Board of Martin County v. State Board of Education, 1D08-0216, 998 So.2d 649, 2008 WL 5056251 (Fla. 1st DCA 2008); District School Bd. of Pasco County v. State Board of Education, 1D08-0363, 998 So.2d 648, 2008 WL 5056292 (Fla. 1st DCA 2008); School Board of Pinellas County v. State Board of Education, 1D08-0369, ___ So.2d ___, 2008 WL 5056335 (Fla. 1st DCA 2008).
[2] Florida Statutes, section 1002.335(2)(a), provides that it is the intent of the Legislature that "[t]here be established an independent, state-level commission whose primary focus is the development and support of charter schools."
[3] Article IX, section 1(a) provides in part: "Adequate provision shall be made by law for a uniform, efficient, safe, secure, and high quality system of free public schools that allows students to obtain a high quality education and for the establishment, maintenance, and operation of institutions of higher learning and other public education programs that the needs of the people may require."