# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

————————————————

No. 1D18-2040

————————————————

THE SCHOOL BOARD OF COLLIER
COUNTY, FLORIDA,

Appellant/Cross-Appellee,

v.

FLORIDA DEPARTMENT OF
EDUCATION; STATE BOARD OF
EDUCATION; RICHARD
CORCORAN, in his official
capacity as Florida
Commissioner of Education;
ANDY TUCK, in his official
capacity as Chair of the State
Board of Education, THE
PASSPORT SCHOOL, INC.; HOPE
CHARTER SCHOOL, INC.; LEGACY
HIGH SCHOOL, INC.; MARCO
ISLAND ACADEMY, A Public
Charter High School, Inc.;
JENNY CARTWRIGHT; BETH
SCHMUDE; LISA BURDUE
TACKETT; THE SCHOOL BOARD OF
ALACHUA COUNTY, FLORIDA; THE
SCHOOL BOARD OF BAY COUNTY,
FLORIDA; THE SCHOOL BOARD OF
BROWARD COUNTY, FLORIDA;
THE SCHOOL BOARD OF CLAY
COUNTY, FLORIDA; THE SCHOOL
BOARD OF DUVAL COUNTY,
FLORIDA; THE SCHOOL BOARD OF
HAMILTON COUNTY, FLORIDA;

THE SCHOOL BOARD OF LEE
COUNTY, FLORIDA; THE SCHOOL
BOARD OF ORANGE COUNTY,
FLORIDA; THE SCHOOL BOARD OF
PINELLAS COUNTY, FLORIDA;
THE SCHOOL BOARD OF POLK
COUNTY, FLORIDA; THE SCHOOL
BOARD OF ST. LUCIE COUNTY,
FLORIDA; THE SCHOOL BOARD OF
VOLUSIA COUNTY, FLORIDA; and
THE SCHOOL BOARD OF
WAKULLA COUNTY, FLORIDA,

     Appellees/Cross-Appellants.

_____

No. 1D18-2072

_____

THE SCHOOL BOARD OF ALACHUA
COUNTY, FLORIDA, THE SCHOOL
BOARD OF BAY COUNTY,
FLORIDA, THE SCHOOL BOARD OF
BROWARD COUNTY, FLORIDA,
THE SCHOOL BOARD OF
HAMILTON COUNTY, FLORIDA,
THE SCHOOL BOARD OF LEE
COUNTY, FLORIDA, THE SCHOOL
BOARD OF ORANGE COUNTY,
FLORIDA, THE SCHOOL BOARD OF
PINELLAS COUNTY, FLORIDA,
THE SCHOOL BOARD OF POLK
COUNTY, FLORIDA, THE SCHOOL
BOARD OF ST. LUCIE COUNTY,
FLORIDA, and THE SCHOOL
BOARD OF VOLUSIA COUNTY,
FLORIDA,

     Appellants/Cross-Appellees,

2

v.

FLORIDA DEPARTMENT OF
EDUCATION; STATE BOARD OF
EDUCATION; RICHARD
CORCORAN, in his official
capacity as Florida
Commissioner of Education;
ANDY TUCK, in his official
capacity as Chair of the State
Board of Education, THE
PASSPORT SCHOOL, INC., HOPE
CHARTER SCHOOL, INC., LEGACY
HIGH SCHOOL, INC., MARCO
ISLAND ACADEMY, A Public
Charter High School, Inc.,
JENNY CARTWRIGHT, BETH
SCHMUDE, LISA BURDUE
TACKETT, THE SCHOOL BOARD OF
CLAY COUNTY, FLORIDA, THE
SCHOOL BOARD OF COLLIER
COUNTY, FLORIDA, THE SCHOOL
BOARD OF DUVAL COUNTY,
FLORIDA and THE SCHOOL
BOARD OF WAKULLA COUNTY,
FLORIDA,

    Appellees/Cross-Appellants.

_____

On appeal from the Circuit Court for Leon County.
John C. Cooper, Judge.

August 29, 2019

LEWIS, J.

Appellants/Cross-Appellees, several Florida school boards, appeal a final judgment entered in favor of Appellees, the Florida Department of Education, the State Board of Education, the Florida Commissioner of Education, and the Chair of the State Board of Education, seeking review of the trial court's rejection of their facial constitutional challenge to several provisions contained in Chapter 17-116, Laws of Florida, also known as House Bill 7069 ("HB 7069"), pertaining to charter schools, including the new "schools of hope."  The school boards contend, as they did below, that the challenged provisions violate their right to "operate, control and supervise all free public schools" in Florida pursuant to Article IX, section 4(b) of the Florida Constitution, that certain provisions violate the uniformity requirement contained in Article IX, section (1)(a), and that HB 7069's capital millage provisions violate Article VII, section 1 by permitting the State to levy ad valorem taxes.  On cross-appeal, Cross-Appellants/Appellees challenge the trial court's rejection of their defenses of lack of standing, estoppel, and failure to exhaust administrative remedies.  For the reasons that follow, we conclude that the school boards have standing to challenge only those provisions of HB 7069 that address capital millage and federal Title I funds.  However, because we find the school boards' challenge to those provisions unavailing on the merits, we affirm the Final Judgment.

## FACTUAL BACKGROUND

In October 2017, the school boards filed a Complaint for Declaratory and Injunctive Relief against Appellees, alleging that HB 7069 unconstitutionally: (1) mandates that they share a portion of their discretionary capital outlay millage revenues with charter schools; (2) allows for the creation of charter schools called "schools of hope" that would be allowed to operate outside of any meaningful control or supervision by the school boards and create dual or even multiple systems of public education; (3) allows schools of hope and authorized charter school systems to serve as local education agencies; (4) strips the school boards of their ability to supervise and control charter schools by requiring them to enter into a standard charter contract with charter school operators; (5)

4

restricts the authority of the school boards to effectively use federal Title I funds to operate, supervise, and control public schools in their district; and (6) divests the school boards of their authority and responsibility to decide how best to improve a public school that the State has identified as low-performing.

With respect to capital millage, the school boards claimed that before HB 7069 was passed, they had full discretion as to whether to use any portion of their capital millage for charter schools. They also challenged the fact that HB 7069 prescribed a specific formula for the Florida Department of Education to use and directed that each district distribute funds to charter schools according to the formula. They alleged that the distribution of funds would severely impact their ability to build new and necessary schools and to adequately maintain the facilities they currently operated. As to federal Title I funding, the school boards alleged that HB 7069 restricted their authority to use the funds for purposes they deemed to be the most educationally beneficial and most likely to effectively address the educational needs of low-income students.

The undisputed facts common to all of the school boards' claims, as set forth by the trial court, are as follows:

> The parties agree that "constitutional authority over public education in Florida is shared among the State and local district school boards." . . . Article IX, section 1(a) of the Florida Constitution provides that the State shall make "adequate provision . . . by law for a uniform, efficient, safe, secure, and high quality system of free public schools that allows students to obtain a high quality education." Article IX, section 2 of the Florida Constitution gives the State Board of Education "such supervision of the system of free public education as is provided by law." And article IX, section 4(b) provides that the local "school board shall operate, control and supervise all free public schools within the school district."
>
> This shared authority is reflected in Florida's long-standing system of free public schools and education finance. "Public education is a cooperative function of the state and local educational authorities," and "[t]he state

5

retains responsibility for establishing a system of public education through laws, standards, and rules." § 1000.03(3), Fla. Stat. In addition, "[t]he district school system shall be considered as a part of the state system of public education. All actions of district school officials shall be consistent and in harmony with state laws and with rules and minimum standards of the state board." . . . Florida's charter schools are likewise "part of the state's program of public education," and "[a]ll charter schools in Florida are public schools." § 1002.33(1), Fla. Stat.

The Local Boards do not challenge the overall structure of Florida's system of public schools or its primary funding mechanism, the Florida Education Finance Program ("FEFP"), and Florida courts have repeatedly acknowledged the constitutionality of Florida's basic funding formula for public education. . . .

Nor do the Local Boards challenge the underlying constitutionality of public charter schools or the State's authority to require local boards to approve an application to open a charter school – both of which also have been upheld by Florida courts. . . .

Under these presumptively constitutional laws, local school boards are responsible for considering and approving applications to open a charter school (including "[t]he facilities to be used and their location") and for monitoring and reviewing any charter schools that they approve or "sponsor." . . . The Local Boards thus "monitor the revenues and expenditures of [each] charter school" and may terminate or nonrenew a charter for a variety of reasons, including "failure to meet the requirements for student performance stated in the charter" and "[f]ailure to meet generally accepted standards of fiscal management." . . . Since the creation of public charter schools in 1996, Florida's charter-school laws have also required local school boards to "make timely and efficient payment and reimbursement to charter schools" based on a statutory funding formula that includes "gross state and local funds, discretionary lottery funds, and funds from the school district's current operating discretionary millage levy." . . . For example, during the 2016-2017

6

school year, 12 of the Local Boards (excluding the school boards for Hamilton and Collier counties) distributed nearly $780 million in FEFP funding to charter schools – including over $330 million in locally generated ad valorem tax revenues. . . .

The parties filed cross-motions for summary judgment. Appellees challenged the school boards' standing to raise all but their capital millage claim. Following the summary judgment hearing, the trial court entered its Final Order and Judgment. Therein, the trial court, set forth in part:

> **A. The State Defendants' Procedural Defenses Do Not Warrant a Summary Judgment in Their Favor.**
>
> Before reaching the parties' arguments on the merits, the Court rejects the State Defendants' arguments that some or all of the Local Boards' claims are barred by a lack of standing, the doctrine of estoppel, or a failure to exhaust administrative remedies.
>
> With respect to standing, the Local Boards seek a declaratory judgment that various statutes interfere with their authority under article VII and article IX of the Florida Constitution. Florida law allows "[a]ny person . . . whose rights, status, or other equitable or legal relations are affected by a statute" to "obtain a declaration of rights, status, or other equitable or legal relations thereunder." § 86.021, Fla. Stat. The Local Boards allege that the statutes at issue affect their rights, and despite the State Defendants' arguments to the contrary, the Local Boards have standing to seek declaratory relief in this action.
>
> . . . .
>
> **B. The Local Boards' First Claim Challenging the "Capital Millage Provisions," Fails as a Matter of Law.**

7

The Local Boards' claim that HB 7069's capital-millage provisions violate article VII and article IX of the Florida Constitution is barred by binding and settled precedent. The Florida Constitution "creates a hierarchy under which a school board has local control, but the State Board supervises the system as a whole." . . . The State's "broader supervisory authority may at times infringe on a school board's local powers, but such infringement is expressly contemplated – and in fact encouraged by the very nature of supervision – by the Florida Constitution." . . . And "there is nothing in the constitution" – not in article VII, nor in article IX – "which requires that [junior colleges or other public education programs] be under the control of the local school board or that prohibits the legislature [from] enacting laws requiring that some local school funds be used in support of such institutions to the extent that they serve a local purpose." . . .

In *Brevard County*, the Florida Supreme Court held that requiring local boards of education to share their property-tax revenues with junior colleges (which were outside the local boards' control) did not violate article VII or article IX of the Florida Constitution.

. . . .

The Local Boards' attempt to distinguish *Brevard County* on the ground that the junior colleges in that case were not "under the control of the local schools boards" . . . is unpersuasive. If local tax revenues could be used in *Brevard County* to support junior colleges that were not even under the local board's control, surely those funds can be used to support local public charter schools that will in turn use the funds to house and educate local schoolchildren. The Legislature has at least as much authority to require the use of local taxes to support locally sponsored and supervised charter schools here as it did to require local boards to fund junior colleges that were beyond the local boards' control in *Brevard County*. Thus, *Brevard County* forecloses the Local Boards' article VII and article IX claims.

8

The Court also rejects the Local Boards' argument that HB 7069 unconstitutionally requires them to share capital-outlay revenues "on an arbitrary basis" because the enrollment-based distribution formula does not consider each eligible "charter school's actual need." . . . To the contrary, it is undisputed that the average distribution of capital-millage funds to eligible charter schools under HB 7069 for the 2017-2018 school year was not enough to cover the full cost of a typical charter-school lease. . . . HB 7069's enrollment-based formula for charter-school capital-outlay funding accounts for the fact that schools with more students need more classrooms, and charter schools are required to spend capital-outlay funding for substantially the same purposes as school districts. . . . The Local Boards have not shown that the capital-millage provisions are constitutionally different from the numerous other, presumptively constitutional requirements governing the use of local tax dollars in Florida's public schools – which have included charter schools for more than 20 years.

This Court cannot wade into policy debates about "the enactment of educational policies regarding teaching methods and accountability, the appropriate funding of public schools, the proper allowance of charter schools and school choice, the best methods of student accountability and school accessibility, and related funding priorities." . . . Regardless of whether requiring the Local Boards to share capital-millage revenues with their local charter schools is "bad policy" . . ., the Court cannot determine that HB 7069's capital-millage provisions "cross constitutional lines" . . . when those policies are supported by a conceivable rational basis.

Nor have the Local Boards explained how the Constitution could preclude the State from imposing conditions on a discretionary capital-millage tax that can be levied only with legislative authorization and the Local Boards' voluntary approval. . . . This requirement is no more intrusive than the presumptively constitutional requirements imposed on local school districts by the FEFP and many other statutory

requirements that the Local Boards have not challenged in this litigation.

. . . .

### F. The Fifth Claim, Regarding "Title I" Funds, Fails a Matter of Law.

The Local Boards' Title I claim – which is based on the theory that they have a state constitutional right under article IX, section 4(b) "to allocate Title I [federal] funds in the manner [they] deem[] most beneficial" . . . – fails as a matter of law because the Local Boards do not have any state constitutional right to federal Title I dollars. Under federal law, a school district cannot receive any of those funds unless the State determines that the district's Title I plan meets the requirements of federal law and "provides that schools served under this part substantially help children served under this part meet the challenging State academic standards." . . . .

HB 7069's effort to direct more Title I funding toward individual schools is also rationally related to legitimate concerns about ensuring that Title I funds benefit schools with the highest proportions of economically disadvantaged students. It is undisputed that federal policy has "emphasized poverty and established the priority that Title I funding flow to high-poverty schools before serving schools with less poverty." . . . And guidance from the U.S. Department of Education has further encouraged the use of Title I funds in specific schools as opposed to reserving those funds at the district level. . . . The State Defendants are entitled to judgment as a matter of law on the Local Boards' fifth cause of action.

Thereafter, the trial court entered a Final Judgment in favor of Appellees. This appeal and cross-appeal followed.

## ANALYSIS

### *Standing*

Cross-Appellants/Appellees contend on cross-appeal that the trial court erred in rejecting their arguments that the school boards lacked standing to raise all but their capital millage claim, that they should be estopped from raising their claims, and that they failed to exhaust their administrative remedies. We reject the latter two arguments without comment. As to the standing argument, we review the issue de novo. *Cartwright v. LJL Mortg. Pool, LLC*, 185 So. 3d 614, 615 (Fla. 4th DCA 2016).

In rejecting the standing argument, the trial court cited section 86.021, Florida Statutes, which permits any person whose rights may be in doubt to "obtain a declaration of rights, status, or other equitable or legal relations thereunder." The trial court determined that because the school boards alleged that the "statutes at issue" affected their rights, they had standing to seek declaratory relief. We hold, however, that the public official standing doctrine controls the issue of standing in this case, not the declaratory judgment statute.

The doctrine, which we recently addressed and which is grounded in the separation of powers, "recognizes that public officials are obligated to obey the legislature's duly enacted statute until the judiciary passes on its constitutionality." *Sch. Dist. of Escambia Cty. v. Santa Rosa Dunes Owners Ass'n*, 274 So. 3d 492, 494 (Fla. 1st DCA 2019). It is for that reason that a public official's "'[di]sagreement with a constitutional or statutory duty, or the means by which it is to be carried out, does not create a justiciable controversy or provide an occasion to give an advisory judicial opinion.'" *Id.* (quoting *Dep't of Revenue v. Markham*, 396 So. 2d 1120, 1121 (Fla. 1981), *superseded by statute as recognized in Crossings at Fleming Island Cmty. Dev. Dist. v. Echeverri*, 991 So. 2d 793, 802-03 (Fla. 2008)). The prohibition against public officials attacking the constitutionality of a statute is not limited to those public officials charged with a duty under the challenged law, but also extends to public officials whose duties are affected by the challenged law. *Id.* at 495; *see also Echeverri,* 991 So. 2d at 794–803 (holding that a property appraiser acting in his or her official

capacity lacks standing to raise the constitutionality of a statute as a defense in an action by a taxpayer and finding its earlier holding in *State ex rel. Atlantic Coast Line Railway Co. v. State Board of Equalizers,* 94 So. 681, (1922), that a public official may not challenge the constitutionality of the statute as "promot[ing] an important public policy of ensuring the orderly and uniform application of state law"); *Dep't of Educ. v. Lewis*, 416 So. 2d 455, 458 (Fla. 1982) ("State officers and agencies must presume legislation affecting their duties to be valid, and do not have standing to initiate litigation for the purpose of determining otherwise."); *Island Resorts Invs., Inc. v. Jones*, 189 So. 3d 917, 922 (Fla. 1st DCA 2016) (holding that the property appraiser and tax collector lacked standing to raise the constitutionality of the statute at issue based upon the public official standing doctrine).

The school boards' constitutional challenge to HB 7069's provisions represents their disagreement with new statutory duties enacted by the Legislature. As the foregoing authority makes clear, however, the school boards must presume that the provisions at issue are constitutional. In reaching our determination on standing, we reject the school boards' argument that this case is governed by the rule that standing is allowed where a public official is willing to perform his or her duties but is prevented from doing so by others. *See Reid v. Kirk*, 257 So. 2d 3, 4 (Fla. 1972) (recognizing that standing is permitted when a public official is prevented "by others" from performing the duties that he or she is willing to perform). While the school boards rely upon the supreme court's determination in *Coalition for Adequacy & Fairness in School Funding, Inc. v. Chiles*, 680 So. 2d 400, 411 n.4 (Fla. 1996), that the schools boards in that case had standing under the "prevention of duties" doctrine to challenge "a constitutional violation which renders them unable to adequately discharge their duties," the plaintiffs in that case, which included private plaintiffs as well as school boards, sought a declaration that the State failed to provide Florida students an adequate education by failing to allocate adequate resources for a uniform system of free public schools. It was not a situation where the school boards were claiming that a statute was unconstitutional, as is the case here. *See Markham*, 396 So. 2d at 1121 ("For important policy reasons, courts have developed special rules concerning the standing of governmental officials to bring a

12

declaratory judgment action questioning a law those officials are duty-bound to apply. As a general rule, a public official may only seek a declaratory judgment when he is 'willing to perform his duties, but ... prevented from doing so by others.' *Reid v. Kirk*, 257 So.2d 3, 4 (Fla.1972). Disagreement with a constitutional or statutory duty, or the means by which it is to be carried out, does not create a justiciable controversy or provide an occasion to give an advisory judicial opinion.").

Based upon the foregoing, the school boards lack standing to challenge the constitutionality of HB 7069's provisions pertaining to the schools of hope, the charter school standard contract, and the charter school "turnaround" provisions. As for the school boards' claims regarding capital millage and federal Title I funds, we find that the public funds exception, which allows for standing to challenge the constitutionality of a law providing for the expenditure of public funds, confers standing upon the school boards to raise those claims. *See Echeverri*, 991 So. 3d at 797 (recognizing the public funds exception); *Branca v. City of Miramar*, 634 So. 2d 604, 606 (Fla. 1994) (same); *Island Resorts Invs, Inc.,* 189 So. 3d at 922 (same). As such, we will address the school boards' constitutional claims as to those provisions on the merits.

## *Constitutional Claims*

The determination of whether a statute is constitutional is a pure question of law reviewable de novo. *Scott v. Williams*, 107 So. 3d 379, 384 (Fla. 2013). The same standard applies to a summary judgment ruling where there is no genuine issue of material fact. *Id.* "As a general rule, courts may not reweigh the competing policy concerns underlying a legislative enactment." *Bush v. Holmes*, 919 So. 2d 392, 398 (Fla. 2006). When the Legislature acts within its constitutional limits, its power to resolve issues of civic debate is to receive great deference. *Id.* A facial constitutional challenge considers only the text of the statute, not its application to a particular set of circumstances. *Duval Cty. Sch. Bd. v. State, Bd. of Educ.*, 998 So. 2d 641, 643 (Fla. 1st DCA 2008). A determination that a statute is facially unconstitutional means that no set of circumstances exists under which the statute would be valid. *Id.* The party claiming that a statute is facially

13

unconstitutional must demonstrate that the statute's provisions pose a present total and fatal conflict with applicable constitutional standards. *Id.*

As for the State's constitutional authority for education, article IX, section 1(a) of the Florida Constitution provides in part:

> The education of children is a fundamental value of the people of the State of Florida. It is, therefore, a paramount duty of the state to make adequate provision for the education of all children residing within its borders. Adequate provision shall be made by law for a uniform, efficient, safe, secure, and high quality system of free public schools that allows students to obtain a high quality education and for the establishment, maintenance, and operation of institutions of higher learning and other public education programs that the needs of the people may require.

Article IX, section 2 provides that the "state board of education shall be a body corporate and have such supervision of the system of free public education as is provided by law." With respect to the school boards' constitutional authority, article IX, section 4 provides in part:

> (b) The school board shall operate, control and supervise all free public schools within the school district and determine the rate of school district taxes within the limits prescribed herein. Two or more school districts may operate and finance joint educational programs.

Article IX, Section 4 Claims

The school boards contend that HB 7069 removes their discretion over financial decisions by imposing strict limits on how they can spend the tax dollars they raise and, therefore, violates their constitutional right to operate, control, and supervise the schools in their districts. Prior to the passage of HB 7069, section 1011.71(2), Florida Statutes (2016), read, "In addition to the maximum millage levy as provided in subsection (1), each school board may levy not more than 1.5 mills against the taxable value

14

for school purposes for district schools, including charter schools at the discretion of the school board" to fund certain enumerated expenses and projects. HB 7069 amended the provision and removed "at the discretion of the school board." Ch.17-116, § 29, Laws of Fla. (codified at § 1011.71(2), Fla. Stat. (2017)). Prior to the passage of HB 7069, section 1013.62(1), Florida Statutes (2016), set forth, "In each year in which funds are appropriated for charter school capital outlay purposes, the Commissioner of Education shall allocate the funds among eligible charter schools as specified in this section." That provision was deleted in HB 7069, and the following was added in its place: "Charter school capital outlay funding shall consist of revenue resulting from the discretionary millage authorized in s. 1011.71(2) and state funds when such funds are appropriated in the General Appropriations Act." Ch. 17-116, § 31, Laws of Fla. (codified at § 1013.62(1), Fla. Stat. (2017)). The Legislature also added, "The department shall use the following calculation methodology to allocate state funds appropriated in the General Appropriations Act to eligible charter schools." *Id.* (codified at § 1013.62(2), Fla. Stat. (2017)). The Legislature added as well, "If the school board levies the discretionary millage authorized in s. 1011.71(2), the department shall use the following calculation methodology to determine the amount of revenue that a school district must distribute to each eligible charter school . . . ." *Id.* (codified at § 1013.62(3), Fla. Stat. (2017)).[*]

---

[*] As the parties point out, the Legislature amended section 1013.62 in 2018 by providing that charter school capital outlay funding would consist of only state funds rather than state funds and revenue resulting from discretionary millage. Ch. 18-6, § 45, Laws of Fla. The Legislature added, "Beginning in fiscal year 2019-2010, charter school capital outlay funding shall consist of state funds when such funds are appropriated in the General Appropriations Act and revenue resulting from the discretionary millage authored in s. 1011.71(2) . . . ." The school boards contend that even with this postponement of the implementation of the capital millage provision to 2019-20, they "still must plan for this diversion of revenue in their long-term budgeting plans."

15

The school boards claim that they are not attacking the formula chosen by the State or the concept that charter schools must be funded. Their "narrow complaint" is that the Florida Constitution requires the funding decisions to be made by local elected officials, not by state employees far removed from local needs and concerns. In rejecting their argument, the trial court reasoned in part that the school boards failed to explain how the Florida Constitution could preclude the State from imposing conditions on a discretionary capital millage tax that can be levied only with legislative authorization. The school boards have failed to show any error on the trial court's part. Appellees are correct that what the Legislature has done with respect to the capital millage provisions is exercise its supervisory power under article IX, section 1(a) to ensure adequate provision be made for the "free public schools" in Florida. While charter schools are statutorily considered to be public schools, the reality is that they do compete with the traditional public schools in their districts. Indeed, section 1002.33(2)(c)2., Florida Statutes (2017), sets forth that one of the purposes of charter schools is to "[p]rovide rigorous competition within the public school district to stimulate continual improvement in all public schools." Given such, the State's constitutional duty to make adequate provision for Florida's public schools must be interpreted to mean that the State has a duty to ensure that charter schools are not neglected by the school boards. By requiring that charter schools receive a certain portion of capital millage funds, the State is not violating article IX, section 4, but is fulfilling the purpose of article IX, section 1. As the Fourth District has reasoned:

> The Florida Constitution therefore creates a hierarchy under which a school board has local control, but the State Board supervises the system as a whole. This broader supervisory authority may at times infringe on a school board's local powers, but such infringement is expressly contemplated – and in fact encouraged by the very nature of supervision – by the Florida Constitution.

*Sch. Bd. of Palm Beach Cty. v. Fla. Charter Educ. Found. Inc.*, 213 So. 3d 356, 360 (Fla. 4th DCA 2017). Moreover, as Appellees contend, section 1013.62(4) is very detailed as to what charter schools may spend capital outlay funds on, and subsection (5) of

16

that statute provides that if a charter school is nonrenewed or terminated, any unencumbered funds and all equipment and property purchased with school board funds revert to the boards' ownership. We, therefore, reject the school boards' constitutional challenge to the capital millage provisions under article IX, section 4.

Turning to Title I, the federal program that helps fund the needs of low-income students, HB 7069 added the following language to section 1011.69, Florida Statutes:

> After providing Title I, Part A, Basic funds to schools above the 75 percent poverty threshold, school districts shall provide any remaining Title I, Part A, Basic funds directly to all eligible schools as provided in this subsection. For purposes of this subsection, an eligible school is a school that is eligible to receive Title I funds, including a charter school. . . .

Ch. 17-116, § 45, Laws of Fla. (codified at § 1011.69(5), Fla. Stat. (2017)). The school boards contend that prior to the enactment of HB 7069, they could use a portion of the Title I funds to fund district-wide programs, such as summer school, after-hours programs, district-wide science and technology initiatives, or a transportation system to ensure that low-income students could take advantage of the programs. They claim that the foregoing provision unconstitutionally divested them of their right to decide how to spend federal Title I funds. In rejecting this claim, the trial court correctly recognized that the school boards do not have any constitutional right to federal Title I funds. Moreover, as is the case with capital millage, we find that the Title I issue is governed by the State's constitutional authority under article IX, section 1 to ensure the adequate provision of education for all children in Florida. Ensuring that students in charter schools receive the federal funds that they are entitled to without relying upon the school boards' discretion on how to allocate those funds does not violate Florida's Constitution.

Article VII Claim

The school boards also challenge HB 7069 by contending that the Legislature imposed forbidden state ad valorem taxation by adding the capital millage provisions. Article VII, section 1(a) of the Florida Constitution provides in part that "[n]o tax shall be levied except in pursuance of law" and "[n]o state ad valorem taxes shall be levied upon real estate or tangible personal property." Article VII, section 9(a), which addresses "[l]ocal taxes," sets forth in part that "[c]ounties, school districts, and municipalities shall, and special districts may, be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes, for their respective purposes . . . ." As the supreme court has explained, article VII, section 9(a) requires legislative authorization before the entities named therein may levy ad valorem taxes. *Fla. Dep't of Educ. v. Glasser*, 622 So. 2d 944, 946-47 (Fla. 1993).

In rejecting the school boards' capital millage argument under article VII, the trial court relied upon *Board of Public Instruction of Brevard County v. State Treasurer of Florida*, 231 So. 2d 1 (Fla. 1970). There, the issue was whether two 1967 statutes, sections 230.0111(2) and 230.0117(7), which provided "for the support of junior colleges by county (now district) boards of public instruction," were constitutional. *Id.* at 2. According to the trial court's judgment, which the supreme court adopted as its decision, it was the appellant board's position that it had the power and duty to operate, control, and supervise all free public schools within the school district under article IX, section 4(b) of the 1968 Florida Constitution, that the control and supervision of junior colleges were placed under officers, and that if junior colleges were no longer part of the free public school system, they could not be supported by funds of the county or district boards. *Id.* The trial court, in citing article VII, section 9, which placed a limit of ten mills on taxes "for all school purposes," set forth, "'All school purposes' is certainly broader than 'free public schools.' This would seem to imply that while the local board must determine the rate of all school district taxes, some of the taxes . . . can properly be used for local school purposes other than the support of the free public school . . . ." *Id.* The opinion further set forth, "Nor is there anything in the constitution which requires that all taxes levied by

18

a county-wide school district be appropriated exclusively to free public schools or that requires that no part of such funds may be appropriated for other school purposes and administered by other officers." *Id.* The opinion also provided in part:

But it [the appellant] takes the position that once the junior college ceases to be a part of the system of free public schools (and thus is removed from its control) any local financing of the junior college becomes unconstitutional. Nothing in the constitution justifies this conclusion. Subject to the power of the legislature to establish a Uniform system of free public schools the control of the free public schools in each district is vested in the local school board. This does not prohibit the legislature from placing upon the local school districts the duty to render financial support to junior colleges which are not under the control of the local school boards but which have been established at their request.

'Plaintiff finally asserts that the whole legislative plan is to establish junior colleges as state institutions and to require their support by local ad valorem taxes, thus circumventing the provision section 1 article VII which prohibits state ad valorem taxes. Junior colleges serve a state function. So do the universities. So do the free public schools. Junior colleges also serve a distinctly local function. The law requires that the plan of each junior college 'contain provisions for serving all eligible students in the junior college district.' The court knows what everybody knows. One of the major reasons for establishing a junior college is to bring this level of education within commuting distance of large numbers of students who could not otherwise attend college. The local board must recognize the need and request its establishment before it can be authorized. Ad valorem taxes levied by school districts for support of such institutions are local taxes levied for local purposes.

'While the legislature may not circumvent the prohibition of state ad valorem taxation by any scheme or device which requires local ad valorem taxes and then channels

19

the proceeds into essentially state functions which are not also local functions, no such situation is here presented.

*Id.* at 4; *see also Sandegren v. State, Sarasota Cty. Pub. Hosp. Bd.*, 397 So. 2d 657, 659 (Fla. 1981) (citing *Brevard County* in support of its conclusion that there was nothing in the state constitution that prohibited the Legislature from enacting laws requiring the expenditure of local funds to support programs, such as mental health service programs, that served a local purpose).

The trial court properly rejected the school boards' arguments that *Brevard County* is a highly fact-specific case that does not address the funding of the system of free public schools that are under their operation, control, and supervision and that HB 7069's mandate is completely different because it tells them how to spend capital dollars on schools. As the trial court reasoned, if local tax revenues could be used in *Brevard County* to support junior colleges that were not even under the local board's control, "surely those funds can be used to support local public charter schools that will in turn use the funds to house and educate local schoolchildren." While the school boards also contend that *Brevard County* is distinguishable because there "was no evidence that local dollars were spent on state priorities," education, whether it be at the K-12 level or at the college level, is not only a state or legislative interest, nor should it be. The school boards' assertion that "when the State determines how local taxes are being spent, and mandates that these taxes be spent to satisfy State priorities, these taxes can no longer be considered local taxes" ignores the fact that charter schools serve their local communities. While charter schools may indeed be considered a legislative or state priority in Florida, their primary purpose is the education of children, which is unquestionably a local priority. Given such, the use of local taxes to fund charter schools does not, as the school boards assert, convert or transform those local taxes into something else. Moreover, while the school boards argue that "local management makes all the difference" in its attempt to distinguish *Brevard County*, the local boards in that case no longer had control over the junior colleges, which was a point clearly made in the opinion. The fact that the school boards in Florida continue to have a role in the operation of charter schools supports

20

our conclusion that HB 7069's capital millage provisions are constitutional.

## CONCLUSION

For the reasons set forth herein, we hold that the school boards lacked standing to raise all but their capital millage and federal Title I funding constitutional claims. Because those claims fail on the merits, the Final Judgment is affirmed.

AFFIRMED.

OSTERHAUS and M.K. THOMAS, JJ., concur.

––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––

Christopher D. Donovan and James D. Fox of Roetzel & Andress, LPA, Naples, for Appellant/Cross-Appellee The School Board of Collier County.

Jon L. Mills and Stephen Zack of Boies Schiller Flexner LLP, Miami; Stuart H. Singer and Sabria A. McElroy of Boies Schiller Flexner LLP, Fort Lauderdale, for Amicus Curiae The School Board of Palm Beach County, in support of Appellants/Cross-Appellees The School Boards of Alachua, Bay, Broward, Hamilton, Lee, Orange, Pinellas, Polk, St. Lucie, and Volusia Counties.

Franklin R. Harrison and Heather K. Hudson of Hand Arendall Harrison Sale LLC, Panama City; Steven L. Brannock, Ceci C. Berman, and Joseph T. Eagleton of Brannock & Humphries, Tampa; Philip J. Padovano of Brannock & Humphries, Tallahassee, for Appellees/Cross-Appellants The School Boards of Alachua, Bay, Broward, Hamilton, Lee, Orange, Pinellas, Polk, St. Lucie, and Volusia Counties.

Shawn A. Arnold, Melissa Gross-Arnold, and Braxton A. Padgett of The Arnold Law Firm, LLC, Jacksonville, for Appellees/Cross-Appellants Hope Charter School, Inc., Legacy High School, Inc., Marco Island Academy, A Public Charter High School, Inc., The Passport School, Inc., Jenny Cartwright, Beth Schmude, and Lisa Burdue Tackett.

Amit Agarwal, Solicitor General, and Edward M. Wenger, Chief Deputy Solicitor General, Office of the Attorney General, Tallahassee; Rocco E. Testani of Eversheds Sutherland (US) LLP, Atlanta, pro hac vice; and Matthew H. Mears, Department of Education, for Appellees/Cross-Appellants The Florida Department of Education, State Board of Education, Richard Corcoran, and Andy Tuck.